## IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
## DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 33576-3-III |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | UNPUBLISHED OPINION |
| | ) | |
| ROY E. COOLEY, | ) | |
| | ) | |
| Appellant. | ) | |

PENNELL, J. — Roy Cooley was convicted of first-degree rape of a child. He raises a number of complaints, none of which were properly preserved for review. We affirm.

## FACTS

Two months after their breakup, Mr. Cooley's ex-girlfriend contacted the police and reported that her six-year-old son had made sexual assault allegations against Mr. Cooley. Mr. Cooley's ex-girlfriend admittedly delayed making this report. She also failed to include the allegations of sexual abuse in a restraining order petition filed against Mr. Cooley. At trial, Mr. Cooley's ex-girlfriend explained her behavior as follows:

No. 33576-3-III
*State v. Cooley*

[Prosecutor]: Why did you wait?
[Witness]: Just trying to make sure that I wasn't going to mess up anybody's life.
[Prosecutor]: Okay.
[Witness]: Without being sure of—
[Prosecutor]: Without being sure of what?
[Witness]: Yeah. Without knowing that what I was going—I don't know. That knowing that what my son was saying was the truth. I was just trying to—
[Prosecutor]: Well, at the point of the second conversation when you told [your son] what the defendant said—
[Witness]: Uh-huh.
[Prosecutor]: —did you believe him at that point?
[Witness]: I did. I did when I saw him crying and stuff. That's what made me—I didn't want to believe it.
[Prosecutor]: Made you what?
[Witness]: Made me tell the police.

2 Report of Proceedings (RP) (May 13, 2015) at 149. Defense counsel did not object to this line of testimony. On redirect, the prosecutor broached the subject of delay again. At this point, Mr. Cooley's ex-girlfriend said, "I didn't want to ruin somebody's life *without being [one] hundred percent sure that it had happened.*" *Id*. at 195 (emphasis added). Again, defense counsel did not object.

The defense trial strategy was to attack the credibility and motives of Mr. Cooley's ex-girlfriend. The defense presented an expert witness who described how children's memories are vulnerable to manipulation. Mr. Cooley also testified to an occasion when the victim accidentally discovered a pornographic home video, depicting the victim's

2

mother performing oral sex on Mr. Cooley. Weaving together these two areas of testimony, the defense theorized that the victim conflated what he saw in the video with his own personal history as a result of improper coaching by his mother. The defense did not question that, by the time of trial, the victim believed he was telling the truth. Instead, the defense cast aspersions on the reliability of the victim's mother.

While Mr. Cooley was able to raise serious questions about his ex-girlfriend's credibility, the jury was ultimately unimpressed. After considering testimony not only from Mr. Cooley's ex-girlfriend, but also the victim, a forensic interviewer, and several law enforcement investigators, the jury found Mr. Cooley guilty. He now appeals.

## ANALYSIS

Our analysis is grounded in respect for the jury process. Respect means trusting juries are capable of sifting through complex facts and faithfully applying the law. It means not second guessing jury decisions or rushing to assume juror confusion. Respect also means a jury should be provided the tools necessary to decide a case on the first try. If counsel disagrees with the manner in which something is presented to the jury, corrective action needs to be taken at the earliest possible opportunity. Only in exceptional circumstances will we upset a jury verdict based on missteps that could have been remedied during trial.

*Alleged vouching by the victim's mother*

Mr. Cooley's first argument concerns testimony elicited from his ex-girlfriend, the victim's mother. He contends his ex-girlfriend improperly vouched for her son's testimony while explaining the reasons for delaying her report to the police. Because trial counsel did not object to this testimony, our review turns on whether Mr. Cooley can demonstrate manifest constitutional error. *See* RAP 2.5(a)(3). To succeed in this endeavor, Mr. Cooley "must identify a constitutional error and show how the alleged error actually affected [his] rights at trial." *State v. Kirkman*, 159 Wn.2d 918, 926-27, 155 P.3d 125 (2007). Prejudice cannot be shown if defense counsel's failure to object appears to have been strategic. *Id.* at 937.

Mr. Cooley cannot make the requisite showing of manifest error. Even assuming the testimony in question implicated Mr. Cooley's constitutional right to a jury trial, there was no actual prejudice. While a witness generally must not offer an opinion regarding the defendant's guilt or the credibility of another witness, such testimony is not always prejudicial. "In some instances, a witness who testifies to [her] belief that the defendant is guilty is merely stating the obvious." *State v. Sutherby*, 138 Wn. App. 609, 617, 158 P.3d 91 (2007), *aff'd on other grounds*, 165 Wn.2d 870, 204 P.3d 916 (2009).

This is a case where the allegedly improper comments had no potential for prejudice. Unlike the testimony deemed impermissible in *Sutherby*, the victim's mother here did not deprive the jury of its ability to independently assess the victim's credibility by testifying the victim displays a "tell" when lying. 138 Wn. App. at 617. Instead, the victim's mother made the unsurprising statement that she believed her son. Further, and perhaps more importantly, the testimony from the victim's mother was fully consistent with Mr. Cooley's theory of the case. As previously stated, Mr. Cooley's defense was that his ex-girlfriend had coached her son into making allegations against Mr. Cooley. It was perfectly consistent with that theory for defense counsel to allow the victim's mother to urge the jury to believe her son. Indeed, defense counsel even brought up the mother's statements in closing. We will not disturb Mr. Cooley's conviction based on testimony consistent with his chosen defense theory. The unpreserved claim of error is rejected.[1]

*Alleged judicial comment on the evidence*

During his testimony, Mr. Cooley stated his ex-girlfriend had brought stalking charges against him, but those had been dropped. In rebuttal, the State elicited testimony

---

[1] Because Mr. Cooley does not meet the "actual prejudice" portion of the manifest error test, we do not engage in a harmless error analysis. *Kirkman*, 159 Wn.2d at 926-27.

from Officer Robert Salinas, who had been involved in investigating the stalking charge. Officer Salinas explained that the decision to file charges rested with himself "and the Court." 6 RP (May 15, 2015) at 676. The prosecutor then asked who decided whether a charge would be a felony or a misdemeanor. After the court overruled Mr. Cooley's relevance objection, Officer Salinas stated it was "up to the Court." *Id.* During questioning by the defense, Officer Salinas clarified that he had been incorrect. Rather than the court, Officer Salinas agreed charging decisions rested with the prosecutor's office. No further testimony was provided with respect to the court's role in the process, other than Officer Salinas's comment that after an officer issues a citation or performs an arrest, paperwork is forwarded "to the courts." *Id.* at 678.

Mr. Cooley contends Officer Salinas's testimony amounted to a judicial comment on the evidence in violation of the Washington Constitution. The only objection raised at trial was based on relevance. Accordingly, our review again depends on whether Mr. Cooley can demonstrate manifest constitutional error. *State v. Levy*, 156 Wn.2d 709, 719-20, 132 P.3d 1076 (2006). *See also State v. Embry*, 171 Wn. App. 714, 740-41, 287 P.3d 648 (2012) (evidentiary objection does not preserve appellate review of improper opinion evidence). Again, the standard is not met.

For a constitutional error to be "manifest" it must be readily identifiable. *State v. O'Hara*, 167 Wn.2d 91, 99-100, 217 P.3d 756 (2009). In the context of an improper comment on the evidence, this means the challenged testimony must be explicitly improper or nearly so. *See State v. Jacobsen*, 78 Wn.2d 491, 494-95, 477 P.2d 1 (1970). *See also Kirkman*, 159 Wn.2d at 936; *State v. King*, 167 Wn.2d 324, 332, 219 P.3d 642 (2009). If a series of inferences and assumptions are necessary to understand why a given comment might have been improper, the standard for manifest error is not met.

Mr. Cooley's argument is that Officer Salinas's testimony improperly suggested a court must have approved the charge against him. Although Officer Salinas was only involved in the stalking investigation, which was a misdemeanor, Mr. Cooley asserts the jury could have inferred Officer Salinas's testimony regarding felony decisions applied to Mr. Cooley's current case, which was a felony. He further asserts that because Kittitas County only has two superior court judges with authority to preside over felony cases, Officer Salinas's testimony effectively conveyed to the jury that there was a fifty percent chance the current trial judge had approved the charge on trial.

It is unclear whether the jury could or would have made the series of inferences suggested by Mr. Cooley. Also, there is no precedent for the proposition that an improper judicial comment on the evidence can come from a witness, as opposed to the court. In

7

any event, Officer Salinas never explicitly testified that a court had approved the rape

charge against Mr. Cooley. Any error was not manifest.

*Prosecutorial misconduct*

Mr. Cooley argues for the first time on appeal that the prosecutor committed

multiple instances of misconduct when he: (1) vouched for the credibility of the victim's

mother during closing argument, (2) improperly shifted the burden of the proof to Mr.

Cooley on three occasions, and (3) impermissibly impugned the integrity of defense

counsel. Because Mr. Cooley did not object to these aforementioned errors at trial, we

will not review his claims unless the alleged violations were so flagrant and ill intentioned

that the resultant prejudice could not have been eliminated by a curative instruction. *State

v. Belgarde*, 110 Wn.2d 504, 507, 755 P.2d 174 (1988).

*Vouching for the victim's mother*

During closing argument, the prosecutor summarized the testimony from the

victim's mother regarding disclosures made to her by her son. While recounting the

mother's testimony regarding her son's initial disclosure, the prosecutor stated:

> She's bathing him. She doesn't know the date herself exactly. And [the victim] grabs his testicles and she sees him. He's kind of grabbing it, and she's like, [h]ey, you know, those are yours. We don't do that. *I believe her testimony* – you know, [t]hat's just for you. You don't show that to people. Mom, I've got something to tell you. Okay. And we get our statement.

8

No. 33576-3-III
*State v. Cooley*

7 RP (May 15, 2015) at 751 (emphasis added).

Mr. Cooley argues that when the prosecutor said, "I believe her testimony," he was commenting on the witness's credibility. This characterization is dubious. The prosecutor's statement was, at most, ambiguous. The comment was made in the middle of the prosecutor's description of the witness's testimony. In context, it appears the prosecutor was trying to accurately recount the witness's testimony and simply left out the word "was" after "testimony." This meaning may have been apparent to the court and counsel, thus explaining why there was no objection. In any event, an objection and curative instruction would have clarified the matter. Because no objection was lodged, review on appeal is inappropriate. *See State v. Emery*, 174 Wn.2d 741, 761-62, 278 P.3d 653 (2012).

*Shifting the burden of proof to Mr. Cooley*

Mr. Cooley argues the prosecutor improperly shifted the burden of proof on three occasions when he: (1) asked Mr. Cooley on cross-examination to explain why the victim would make a false allegation, (2) faulted Mr. Cooley for not displaying his genitals to investigators in order to prove there was no match to the victim's description, and (3) argued the jury had to believe the victim had been coached by his mother in order to acquit Mr. Cooley.

9

*Asking for an explanation of false allegation*

The prosecutor never asked Mr. Cooley why the victim was lying. The inquiry was limited to whether Mr. Cooley knew the victim was his accuser before the police told him so. This was not improper. *See State v. Boehning*, 127 Wn. App. 511, 524-25, 111 P.3d 899 (2005)

*Faulting Mr. Cooley for not exposing himself*

Mr. Cooley insists it was improper for the prosecutor to fault Mr. Cooley during closing argument for not exposing himself to the investigating officer in order to show his genitals did not appear similar to what had been described by the victim. Mr. Cooley correctly points out that a defendant is not required to present any evidence and the State alone bears the burden of proving its case beyond a reasonable doubt. *See State v. Fleming*, 83 Wn. App. 209, 215, 921 P.2d 1076 (1996). But a prosecutor has wide latitude in closing argument to draw reasonable inferences from the evidence and express such inferences to the jury. *State v. Hoffman*, 116 Wn.2d 51, 94-95, 804 P.2d 577 (1991).

Whether the prosecutor's comments in this case were merely a comment on the evidence or an improper attempt to shift the burden of proof is a close call. But an objection and curative instruction would have cleared up the matter. Once again, because no objection was made, review is unwarranted. *See Emery*, 174 Wn.2d at 761-62.

10

*Arguing the jury had to believe the victim was coached*

During closing argument, the prosecutor stated, "If we go on the defense theory part one of it's [the victim's mother], *that's what you have to believe*." 7 RP (May 15, 2015) at 750 (emphasis added). In context, it appears the prosecutor may have been suggesting to the jury that, in order to acquit, it must believe the victim's mother is lying and that she coached the victim to lie. Any such suggestion would be improper. *See, e.g., Fleming*, 83 Wn. App. at 213-16. However, a curative instruction would have dispelled any confusion or prejudice. *See Emery*, 174 Wn.2d at 761-62.

*Impugning the integrity of defense counsel*

Mr. Cooley argues the prosecutor impugned the role of defense counsel when he elicited testimony from the defense expert that defense attorneys routinely argue child sexual assault victims have been coached or influenced by an adult. This line of questioning was not explicitly disparaging. The jury could have inferred that the reason defense attorneys routinely argue child sexual assault victims have been coached is that, as testified to by the expert, the dangers of coaching and memory manipulation are very real. Any improper inference from the prosecutor's questions could have been addressed by a curative instruction. Because no objection or request for instruction was made, review on appeal is unwarranted. *See id.*

11

No. 33576-3-III
*State v. Cooley*

*Cumulative error doctrine*

Mr. Cooley argues the prosecutorial misconduct here was so pervasive that it could not have been dispelled by curative instructions. We disagree. At most, Mr. Cooley has pointed to one clear example of improper prosecutorial comments. This is not a basis for reversal.

*Ineffective assistance of counsel*

Mr. Cooley claims his trial counsel was ineffective for failing to object to the errors set forth in his briefing. An ineffective assistance of counsel claim may be raised for the first time on appeal. *State v. Kyllo*, 166 Wn.2d 856, 862, 215 P.3d 177 (2009). However, to prevail, the defense must demonstrate not only deficient performance, but also prejudice. *State v. Thomas*, 109 Wn.2d 222, 225-26, 743 P.2d 816 (1987); *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). Defense counsel's conduct will not be considered deficient if it can be characterized as legitimate trial strategy. *Kyllo*, 166 Wn.2d at 863.

Given the defense theory of the case, counsel's decision not to object to the testimony from the victim's mother may well have been strategic. Other failures to object may have been due to the ambiguous nature of the testimony and argument. The record on appeal does not warrant the conclusion that Mr. Cooley's trial counsel was deficient.

12

No. 33576-3-III
*State v. Cooley*

It could be that additional evidence will show some of the decisions made by trial counsel were not strategic or reasonable. But if so, that is something to be raised in a personal restraint petition, not direct appeal. *State v. McFarland*, 127 Wn.2d 322, 335, 899 P.2d 1251 (1995).

## CONCLUSION

Mr. Cooley's judgment of conviction is affirmed.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____
Pennell, J.

I CONCUR:

_____
Lawrence-Berrey, A.C.J.

13

No. 33576-3-III

FEARING, C.J. (dissenting) — The majority emphasizes the need to trust a jury. As a former trial attorney and an occasional trial judge, I trust juries. As a trial lawyer, I concluded that my infrequent disagreement with a jury resulted from my zeal for my client, not from the fault of the jury. Still, trust for juries has limits. The law presumes that a jury may not be trusted to render a correct verdict if it hears hearsay, irrelevant, unqualified opinion, or unduly prejudicial testimony or if the State delivers misleading closing arguments. Otherwise, the law would promulgate no rules of evidence or principles addressing prosecutorial arguments. The constitution affords an accused a right to an impartial jury, and a trial infected by erroneous evidence and misleading argument tests the impartiality of the jury.

Stories abound of false convictions, including convictions assessing capital punishment. The State of Washington holds a special obligation to protect children from sexual assault, but sexual assault cases are also subject to false convictions. No one benefits from false convictions, and mistaken convictions irreparably undermine trust in our justice system. Appellate courts, except in appeals based on insufficient evidence, do not adjudge an accused guilty or innocent. Nevertheless, we play an important role in

preventing false convictions resulting from inadmissible evidence and improper argument.

Our jury heard more than sufficient evidence to convict Roy Cooley of the charge of child rape of his stepson Ralph, a pseudonym. Indeed Cooley may be guilty. Nevertheless, the jury heard extensive, prejudicial, impermissible evidence. Therefore, we should grant Cooley a new trial. A jury should assess his guilt or innocence only within the confines of Washington's evidence rules. The jury should convict or acquit without the influence of unacceptable prosecution argument.

The majority may agree with me that the jury heard inadmissible evidence and some of the State's closing arguments impermissibly shifted the State's burden of proof to Roy Cooley. Nevertheless, the majority will not grant a new trial because Cooley's defense counsel failed to object to the evidence and to the argument. Washington case law dictates otherwise.

### Vouching

Roy Cooley complains about Ruth Landrum's testimony, in two passages, during which Landrum, Ralph's mother, averred that she concluded Ralph told the truth when accusing Cooley of putting Cooley's penis in Ralph's mouth. Ruth Landrum is a pseudonym in order to protect Ralph's identity. In the second passage, Landrum declared she believed Ralph one hundred percent. This testimony violated longstanding Washington law.

No reliable test for truthfulness exists, such that a witness is not qualified to judge the truthfulness of a child's story. *United States v. Azure,* 801 F.2d 336, 341 (8th Cir. 1986); *State v. Dunn,* 125 Wn. App. 582, 594, 105 P.3d 1022 (2005). This rule is but a more specific application of the general rule that no witness may give an opinion on another witness' credibility. *State v. Neidigh,* 78 Wn. App. 71, 76-77, 895 P.2d 423 (1995); *State v. Wright,* 76 Wn. App. 811, 821-22, 888 P.2d 1214 (1995); *State v. Suarez-Bravo,* 72 Wn. App. 359, 366, 864 P.2d 426 (1994); *State v. Padilla,* 69 Wn. App. 295, 299, 846 P.2d 564 (1993); *State v. Walden,* 69 Wn. App. 183, 186-87, 847 P.2d 956 (1993); *State v. Smith,* 67 Wn. App. 838, 846, 841 P.2d 76 (1992); *State v. Stover,* 67 Wn. App. 228, 231, 834 P.2d 671 (1992); *State v. Casteneda-Perez,* 61 Wn. App. 354, 362-63, 810 P.2d 74 (1991); *State v. Barrow,* 60 Wn. App. 869, 875, 809 P.2d 209 (1991). Lay opinion of the truthfulness of another is not helpful within the meaning of ER 701, because the jury can assess credibility as well or better than the lay witness. *State v. Carlson,* 80 Wn. App. 116, 123, 906 P.2d 999 (1995).

In most sexual abuse cases, the respective credibility of the victim and the defendant is a crucial question because the testimony of each directly conflicts and the two are the only percipient witnesses. *State v. Alexander,* 64 Wn. App. 147, 154, 822 P.2d 1250 (1992); *State v. Fitzgerald,* 39 Wn. App. 652, 657, 694 P.2d 1117 (1985). Therefore, declaring the victim to be telling the truth in essence opines that the defendant is guilty. Opinions on guilt are improper whether made directly or by inference. *State v.*

3

No. 33576-3-III
*State v. Cooley* (dissenting)

*Quaale*, 182 Wn.2d 191, 199, 340 P.3d 213 (2014); *State v. Montgomery*, 163 Wn.2d 577, 594, 183 P.3d 267 (2008).

The majority correctly notes that Roy Cooley did not object at trial to Ruth Landrum's vouching for the testimony of Ralph. Failure to object to the admissibility of evidence at trial precludes appellate review of that issue unless the alleged error involves manifest error affecting a constitutional right. *State v. Lynn*, 67 Wn. App. 339, 342, 835 P.2d 251 (1992); *State v. Stevens*, 58 Wn. App. 478, 485-86, 794 P.2d 38 (1990). Therefore, Cooley must show manifest constitutional error.

The Washington Supreme Court has issued several formulations for manifest constitutional error, one of which is the showing of prejudice. *State v. Kirkman*, 159 Wn.2d 918, 926-27, 155 P.3d 125 (2007). Along these lines, manifest constitutional error involves a constitutional error that had practical and identifiable consequences in the trial of the case. *State v. Lynn*, 67 Wn. App. at 345 (1992).

Lay witness testimony about the victim's credibility implicates the accused's guilt or innocence and thus implicates the accused's right to a fair trial and impartial jury under article I, section 21 of the Washington State Constitution and the Sixth Amendment to the United States Constitution. *State v. Johnson*, 152 Wn. App. 924, 934, 219 P.3d 958 (2009). The admission of testimony vouching for a witness is constitutional error because such evidence violates the defendant's constitutional right to a jury trial, which includes the independent determination of the facts by the jury. *State v. Quaale*, 182

4

Wn.2d at 199 (2014); *State v. Kirkman*, 159 Wn.2d at 927 (2007); *State v. Florczak*, 76 Wn. App. 55, 74, 882 P.2d 199 (1994). Vouching testimony is also manifest error because the erroneous evidence actually affects an accused's right to a fair trial. *State v. Johnson*, 152 Wn. App. at 934.

Upon a showing by the appellant of constitutional error, the State must show that the error was harmless beyond a reasonable doubt. *State v. Miller*, 131 Wn.2d 78, 90, 929 P.2d 372 (1997). Manifest constitutional error is harmless only if the untainted evidence is so overwhelming that it necessarily supports a guilty verdict. *State v. Guloy*, 104 Wn.2d 412, 426, 705 P.2d 1182 (1985); *State v. Jones*, 71 Wn. App. 798, 813, 863 P.2d 85 (1993). Any error that infringes on a constitutional right is presumed prejudicial. *State v. Dunn*, 125 Wn. App. at 593 (2005).

The majority writes that the appellant cannot show prejudice if his trial counsel's failure to object appears to be strategic. *State v. Kirkman*, 159 Wn.2d at 937 (2007). Nevertheless, the majority does not disclose whether it concludes the decision not to object was strategic. During closing, trial defense counsel laid no emphasis on Ruth Landrum's vouching for Ralph to support a theory that Landrum influenced Ralph's memory in order to retaliate against Cooley. Therefore, objecting to the testimony lacks a tactical foundation.

Four Washington decisions compel reversal of Roy Cooley's guilty conviction. In *State v. Sutherby*, 138 Wn. App. 609, 158 P.3d 91 (2007), *aff'd on other grounds*, 165

5

Wn.2d 870, 204 P.3d 916 (2009), a jury convicted Randy Sutherby of child rape and child molestation, among other charges. This court reversed because the trial court allowed the victim's mother to testify that her daughter was telling the truth. The mother stated she could determine if her daughter lied because of a half-smile that appeared on the child's face on prevarication.

The majority distinguishes *State v. Sutherby* on the ground that the mother, in *Sutherby*, provided some details as to how she determined if her daughter told the truth. The mother mentioned that, when the daughter lied, the daughter had a half-smile. Thus, the mother in Sutherby took measures to judge whether her daughter told the truth. The mother also impliedly suggested to the jury to judge the daughter's truthfulness, when the daughter testified before the jury, by her facial expression.

Ruth Landrum gave no suggestions to the jury as to how to assess Ralph's veracity. Nevertheless, Landrum also took measures outside of court to determine if Ralph told the truth. She did not immediately conclude that Ralph told the truth. Instead, at least according to her, she confronted Roy Cooley with the allegations. She then spoke to Ralph again, and Ralph cried about Cooley denying the allegations. From this, the jury could conclude that Landrum, like the mother in *Sutherby*, took measures to assess the credibility of her child. As in *Sutherby*, Ruth Landrum's testimony prevented the jury from independently assessing the victim's credibility. Anyway, other Washington decisions consider a witness's testimony of the truthfulness of a child to be manifest

6

constitutional error even if the witness does not share a basis for the jury to assess the child's veracity.

A second important decision is *State v. Alexander*, 64 Wn. App. 147 (1992). The prosecution questioned the victim's counselor, David Bennett, about whether the victim gave any indication that she was lying about the abuse. Bennett testified he did not believe the victim lied. This court reversed the conviction of Robert Alexander for child rape. By declaring the victim to be speaking the truth, Bennett essentially opined on the guilt of Alexander. An expert's opinion as to the defendant's guilt invades the jury's exclusive function to weigh the evidence and determine credibility. Without analysis, this court also concluded that the error, combined with other error, was not harmless beyond a reasonable doubt.

Another important decision is *State v. Dunn*, 125 Wn. App. 582 (2005). This court reversed another conviction for rape of a child on the ground of inadmissible testimony. Physician's assistant, James Kramer, testified that, despite an absence of any physical evidence of rape, he concluded that sexual abuse occurred because of the detailed story told him by the victim. The impermissible testimony was prejudicial because the only evidence of sexual abuse was the child's own testimony and hearsay statements to others. The evidence was sufficient to convict Larry Dunn of rape, but still not harmless. The trial became a credibility contest between the alleged victim and the accused.

7

A final compelling decision is *State v. Johnson*, 152 Wn. App. 924 (2009). The State charged Gerald Johnson with child molestation. His trial counsel failed to object to impermissible opinion testimony. The jury heard testimony that Johnson's wife believed the story of the victim. The court held the testimony to be reversible and manifest constitutional error. The testimony invaded Johnson's right under article I, section 2 of the Washington Constitution for a fair trial before an impartial jury.

The untainted evidence against Roy Cooley does not overwhelm. Other evidence undermines the veracity of Ralph's accusation against Roy Cooley. Ralph stated he disclosed the molestation to his mother in the hallway. Ruth Landrum declared that the disclosure came in the bathroom. At trial, Ralph testified that a drawing he made of the incident was a drawing of his father sitting on a cactus. Because of a difficult ending of her relationship with Cooley, Landrum had motive to plant in Ralph's mind the idea of Cooley engaging in wrongdoing. Testimony showed that Ralph may have viewed pornography that included oral sex. During the forensic interview of Ralph, the jury saw Landrum speaking to her son before the interview commenced. Although, Landrum told Ralph to tell the truth, the jury could not hear all of what Landrum told her child. We do not know if Landrum considered the only truth to be molestation. During the interview, Ralph, without any prompting by the interviewer, volunteered that his daddy put Ralph's mouth on his daddy's penis.

The trial pitted the veracity of Ralph against Roy Cooley. Ruth Landrum's

8

opinion of her son Ralph being one hundred percent truthful impacted the heart of the case. At a minimum, the State cannot show beyond a reasonable doubt that Landrum's testimony did not influence the verdict.

The majority writes that defense counsel mentioned the mother's statements in closing. Nevertheless, the majority does not specify which of the many statements uttered by the mother that defense counsel referenced. Presumably the majority writes about defense counsel mentioning Ruth Landrum's vouching testimony and presumably the majority considers defense counsel's reference to the testimony to excuse the admission of the vouching evidence. Nevertheless, a review of the closing statement does not show that defense counsel told the jury that Ruth Landrum believed her son Ralph one hundred percent. The majority gives no citation to the record where counsel allegedly commented on Landrum's vouching for her son's veracity.

The majority writes that Roy Cooley's defense was that Ruth Landrum coached her son into making allegations against Cooley and that allowing Landrum to urge the jury to believe her son was consistent with the defense theory. I agree that Cooley argued that Landrum coached Ralph into making allegations because of the hostile relationship between Cooley and Landrum caused by the difficult breakup. Nevertheless, Cooley could forward this argument without allowing Landrum to testify she believed her son. The State, not Cooley, introduced Landrum's testimony verifying her son's story.

Finally, the majority intimates that a mother's vouching for a child is never

9

harmful, because a parent always vouches for the veracity of a child or at least a jury always believes that a parent vouches for his or her child's truthfulness. I disagree. Parents frequently challenge a child's truthfulness. No case stands for the proposition that vouching by a parent is harmless error.

The State responds to Roy Cooley's assignment of error in the testimony from Ruth Landrum by emphasizing that Landrum vouched for her son's veracity when answering questions about why she delayed reporting molestation to law enforcement. No case law excuses the impermissible vouching on the basis of an independent reason for admitting the opinion. Landrum could have answered the questioning about her delay by stating she wanted to investigate further or she wanted to speak with Roy Cooley first, without Landrum uttering that she later believed her son.

Roy Cooley also argues on appeal that he establishes manifest constitutional error on the basis that he received ineffective assistance of counsel by reason of his trial attorney's failure to object to the testimony of Ruth Landrum vouching for Ralph's veracity. Since manifest constitutional error exists on the ground that Cooley did not receive a fair trial before an impartial jury, I do not address Cooley's alternative ground.

On the basis alone that Ruth Landrum's opining on her son's truthfulness constituted manifest constitutional error, I would grant Roy Cooley a new trial. Other cumulative mistakes also compel reversal of the verdict of guilty. Cumulative error may warrant reversal, even if each error standing alone would otherwise be considered

10

No. 33576-3-III
*State v. Cooley* (dissenting)

harmless. *State v. Weber*, 159 Wn.2d 252, 279, 149 P.3d 646 (2006); *State v. Greiff*, 141 Wn.2d 910, 929, 10 P.3d 390 (2000).

Filing Criminal Charges

In response to Roy Cooley's testimony that Ruth Landrum filed stalking charges against him, the State called to the stand Robert Salinas, a law enforcement officer who investigated the stalking charges. The prosecution asked a series of questions about who decides to file criminal charges: the officer, the prosecutor's office, or a judge. Salinas's answer to the question had no relevance to the charges against Roy Cooley for child rape. The identity of the decision-maker with regard to charges in a separate prosecution has no bearing on the guilt or innocence of one charged with rape. The identity of the decision-maker did not even hold relevance with regard to the dismissed charge of stalking. The State possessed no legitimate purpose for introducing the evidence. Nevertheless, the court overruled an objection from Cooley as to the relevance of the testimony. Officer Salinas testified alternatively that the officer, the prosecutor, and the court, or a combination of two of the three made the decision.

On appeal, Roy Cooley does not quarrel about the relevance of the testimony of Officer Robert Salinas. Instead, he argues the testimony constituted an impermissible and unconstitutional judicial comment on the evidence. I agree with the majority, that Salinas's confusing testimony did not constitute a judicial comment. Cooley forwards no case that holds a judicial comment on the evidence can be uttered by a witness, not the

11

judge. I also concur with the majority that, by itself, Officer Salinas's befuddling testimony was not sufficiently harmful to merit a reversal. Still, the evidence could have led Roy Cooley's jurors to conclude that the judge held some authority in determining whether the State files charges, including those charges the jury reviewed.

Shaven Hair

During his interview by Deputy Chris Whitsett and after viewing the picture drawn by Ralph, including the fur around the penis, Roy Cooley told Whitsett that he could not be the molester because he shaved his pubic hair. During closing, the State argued:

> I know there was three additional facts that he supplies (inaudible). But consider it this way: If, in fact, at that point—if, in fact, unless he had grown back the pubic hair, he's still shaved, great opportunity, literally, to prove (inaudible) pull down your pants and you show the officer. Would that have been good evidence? You're damn right that would have been good evidence.

Report of Proceedings (RP) at 765. On appeal, Cooley contends that the prosecution, by this comment, shifted the burden of proving his innocence on him. The majority does not decide whether the State's comment constituted an impermissible shifting of the burden of proof. Instead, the majority summarily declines review because Cooley's counsel did not object to the remarks during trial.

A defendant has no duty to present evidence; the State bears the entire burden of proving each element of its case beyond a reasonable doubt. *In re Winship*, 397 U.S.

12

358, 361, 90 S. Ct. 1068, 25 L. Ed. 2d 368 (1970); *State v. Fleming*, 83 Wn. App. 209, 215, 921 P.2d 1076 (1996). Thus, the State may not suggest to the jury that the defendant carries any burden to prove his innocence. *State v. Traweek*, 43 Wn. App. 99, 107, 715 P.2d 1148 (1986). In a different but related vein, a criminal defendant has no burden to present evidence, and the State commits error if it suggests otherwise. *State v. Berube*, 171 Wn. App. 103, 117, 286 P.3d 402 (2012). Arguments by the prosecution that shift or misstate the State's burden to prove the defendant's guilt beyond a reasonable doubt constitute misconduct. *State v. Lindsay*, 180 Wn.2d 423, 434, 326 P.3d 125 (2014).

The State argues that the prosecution's remarks were intended to tell the jury what the normal or average person would do if accused of rape and asserted a defense that he shaved his genitals. Thus, according to the State, the remarks attacked Roy Cooley's credibility. But the remarks went further. The prosecution advised the jury that an accused would willingly pull down his pants in front of a law enforcement officer to prove his innocence. The prosecution's remark thereby told the jury that Roy Cooley held a burden to convince Deputy Chris Whitsett that he was not the molester by exposing his genitals. According to the closing remarks, the exposed penis would be "good evidence." Thus, the State indirectly faults Cooley for failing to present evidence.

The State also contends that the prosecution's remarks did not shift the burden at trial, because the prosecution did not comment that Roy Cooley needed to expose his genitals in the courtroom. According to the State, the prosecution argued that Cooley

13

should have presented evidence to the officer, not to the jury. Although this characterization of the closing remarks is accurate, the distinction between presenting evidence during the investigation and offering evidence to the jury is misplaced. The State provides no case law that recognizes this distinction as valid under the constitution's prohibition of imposing any burden on the defendant. The State provides no authority to support its theory that it may argue Cooley holds some obligation to provide evidence to law enforcement, as long as the prosecution does not expressly argue that there is no such corresponding obligation to present evidence to the jury.

Roy Cooley had no burden to prove his innocence to Deputy Chris Whitsett, let alone to the jury. The State's closing argument was essentially that Cooley should have proven his innocence to the officer in order to prove his innocence to the jury. The State's argument told the jury that Cooley should have presented evidence to the investigating officer as part of his efforts to eventually win at trial.

The majority correctly notes that, if the defense failed to object at trial to the prosecution's argument, we will not review the assignment of error unless the misconduct was so flagrant and ill-intentioned that a curative instruction could not eliminate the resultant prejudice. *State v. Belgarde*, 110 Wn.2d 504, 507, 755 P.2d 174 (1988). Unfortunately, the law lacks guidelines to determine when prejudice can be eliminated by a curative instruction. Nevertheless, Washington courts consistently hold that shifting the burden of proof to the defendant amounts to flagrant and ill-intentioned misconduct. *In*

14

*re Personal Restraint of Glasmann*, 175 Wn.2d 696, 713, 286 P.3d 673 (2012); *State v.*

*Fleming*, 83 Wn. App. at 213-14 (1996).

### Mother Lying to Win

During closing argument, the prosecution declared:

> If we go on the defense theory part one of it's [Ruth], that's what
> you have to believe.

RP at 750. I agree with the majority that the statement, in context, told the jury that Roy

Cooley blames Ruth Landrum for the rape charges and, to acquit Cooley, the jury must

find Landrum prevaricating. The State's argument mistakenly told the jury that Cooley is

innocent only if Ruth Landrum is lying. Nevertheless, Cooley could also be found

innocent if the jury concluded that Ralph falsely remembered the alleged rape regardless

of what Ruth Landrum may have told Ralph and regardless of the veracity of Landrum.

The majority agrees that the prosecution's statement is improper. Nevertheless,

the majority will not review the assignment of error because defense counsel did not

object to the argument at trial.

Washington courts have repeatedly held that a prosecutor commits misconduct

when informing a jury that, in order to acquit a defendant, the jury must find that the

State's witnesses are either lying or mistaken. *State v. Casteneda-Perez*, 61 Wn. App. at

362 (1991); *State v. Wright*, 76 Wn. App. at 826 (1995); *State v. Barrow*, 60 Wn. App. at

874-75 (1991). Such an argument by the prosecution misstates the law and misrepresents

15

No. 33576-3-III
*State v. Cooley* (dissenting)

both the role of the jury and the burden of proof. *State v. Fleming*, 83 Wn. App. at 213 (1996). By misstating the basis on which a jury can acquit, the State insidiously shifts the requirement that it prove the defendant's guilt beyond a reasonable doubt. *In re Personal Restraint of Glasmann*, 175 Wn.2d at 713 (2012).

This court may not avoid the error on the ground that defense counsel forwarded no objection during trial. This court deems an argument, that to acquit someone must lie, to be a flagrant and ill-intentioned violation of the rules governing a prosecutor's conduct at trial. *State v. Fleming*, 83 Wn. App. at 214. In *State v. Fleming*, the prosecutor stated during closing argument that, to find the defendants not guilty of rape, the jury would need to "find either that [the victim] has lied about what occurred in that bedroom or that she was confused; essentially that she fantasized what occurred back in that bedroom." 83 Wn. App. at 213 (italics omitted). We reversed the conviction and remanded the case for a new trial, despite trial counsel's failure to object to the closing remarks.

I respectfully dissent.

Fearing, C.J.

16