[Nos. 33647-9-I; 33662-2-I. Division One. August 26, 1996.]

THE STATE OF WASHINGTON, *Respondent*, v. DWIGHT FLEMING, ET AL., *Appellants*.

---

210

*Jeanette Brinster* of *Northwest Defenders Association*; and *Todd S. De Groff*, for appellant Fleming.

*Kevin Cole* of *Washington Appellate Defender Association*; and *Nielsen & Acosta*, for appellant Lee.

*Norm Maleng, Prosecuting Attorney*, and *Francis D. Zavatsky, Deputy*, for respondent.

KENNEDY, A.C.J. — Dwight Fleming and Derek Lee appeal their convictions of second degree rape, contending that the prosecutor committed misconduct during closing arguments.[1] Although none of the prosecutor's arguments was objected to contemporaneously, we reverse and

---

[1]Fleming raises additional contentions, all of which are without merit, which we treat in the unpublished portion of this opinion.

remand for a new trial because the prosecutor committed misconduct rising to the level of manifest constitutional error which we cannot conclude was harmless beyond a reasonable doubt, in light of the evidence at trial.

## FACTS

On the evening of April 23, 1993, D.S., then 17 years old, went dancing with her friends Pam Spokus and Kelly Backstrom at a club in Redmond. Before entering the club, D.S. consumed two to three shots of tequila and drank some beer. After dancing, D.S. and her friends went to Denny's where they met the defendants, Dwight Fleming and Derek Lee. The women invited the defendants and the defendants' friend Brian Tills to come to D.S.'s parents' mobile home with them.

At the trailer, all of the group except Pam Spokus and Brian Tills smoked marijuana and drank tequila, vodka, or beer. D.S. drank between six and eight shots of tequila, and Fleming and Lee each consumed tequila or beer. D.S., who admitted that she was attracted to Fleming, kissed and hugged Fleming, rubbed up against him, and allowed him to put his arms around her in the presence of the others. D.S. invited everyone to come to her bedroom to look at her compact disc collection; only Fleming and Lee followed her to her bedroom.

D.S. testified that once inside the bedroom, she sat on the bed and willingly kissed who she thought to be Fleming on the mouth. D.S. indicated that the kiss was deep and passionate. She stated that somebody kissed her chest, and that somehow she found herself lying on the floor with her legs on the bed while the defendants, who were sitting on the bed, took off her shoes against her will. D.S. testified that after undressing her, although she kicked and protested, the defendants both penetrated her vaginally and that one of the defendants penetrated her orally. D.S. could not remember who did what, nor the sequence of events. She testified that one of the two defendants held

her down while the other one raped her, and that they covered her mouth with their hands when she attempted to scream. D.S. testified that because the intercourse was painful, she told the defendants to use Vaseline and told them where they could find it in the bathroom across the hall.

At one point, Pam Spokus entered the bedroom and saw Lee sitting on the bed, naked from the waist down. She did not see D.S., but believed that D.S. was having consensual sexual intercourse.[2] D.S. testified that she saw Spokus open the bedroom door but could not request help because her mouth was covered. Spokus stated that she heard noises and something that sounded like a "pain scream" coming from the bedroom, but that she believed the noises to be from consensual sex. Spokus testified that at no time did she or the others believe that D.S. needed help.

Shortly after leaving the bedroom, D.S. informed Kelly Backstrom that she had been raped. D.S. was taken to the hospital. An examination revealed that she had engaged in traumatic sexual intercourse, consistent with either forced intercourse or consensual but poorly lubricated intercourse. D.S.'s blood alcohol content was found to be .166, according to a blood sample drawn at 7:45 a.m.. Doctors estimated that D.S.'s blood alcohol content at the time of the intercourse would have been between .25 and .31.

Fleming and Lee initially were each charged with third degree rape in violation of RCW 9A.44.060(1)(a). On the first day of trial, the State was permitted to amend the information to add the alternative charge of second degree rape in violation of RCW 9A.44.050(1)(a). Neither defendant testified at trial. The jury found both defendants guilty of second degree rape. A defense motion for a new trial on the ground of prosecutorial misconduct was thereafter denied.

---

[2]Kelly Backstrom testified that she believed that D.S. was consensually "fooling around" with the defendants, although she did not believe that D.S. was having intercourse with them.

Both defendants were sentenced within the standard range. Both defendants appeal.

## DISCUSSION

Appellants first challenge the following statement, made at the beginning of the prosecutor's closing argument:

> Ladies and gentlemen of the jury, *for you to find the defendants, Derek Lee and Dwight Fleming, not guilty of the crime of rape in the second degree*, with which each of them have been charged, based on the unequivocal testimony of [D.S.] as to what occurred to her back in her bedroom that night, *you would have to find either that [D.S.] has lied about what occurred in that bedroom or that she was confused; essentially that she fantasized what occurred back in that bedroom.*

Verbatim Report of Proceedings at 668 (emphasis ours).

 This court has repeatedly held that it is misconduct for a prosecutor to argue that in order to acquit a defendant, the jury must find that the State's witnesses are either lying or mistaken. *State v. Casteneda-Perez*, 61 Wn. App. 354, 362-63, 810 P.2d 74 ("it is misleading and unfair to make it appear that an acquittal requires the conclusion that the police officers are lying"), *review denied*, 118 Wn.2d 1007 (1991); *State v. Wright*, 76 Wn. App. 811, 826, 888 P.2d 1214, *review denied* 127 Wn.2d 1010 (1995); *State v. Barrow*, 60 Wn. App. 869, 874-75, 809 P.2d 209, *review denied* 118 Wn.2d 1007 (1991). The prosecutor's argument misstated the law and misrepresented both the role of the jury and the burden of proof. The jury would not have had to find that D.S. was mistaken or lying in order to acquit; instead, it was *required* to acquit *unless* it had an abiding conviction in the truth of her testimony. Thus, if the jury were unsure whether D.S. was telling the truth, or unsure of her ability to accurately recall and recount what happened in light of her level of intoxication on the night in question, it was required to acquit. In neither of these instances would the jury also have to find that D.S. was lying or mistaken, in order to acquit.

We note that this improper argument was made over two years after the opinion in *Casteneda-Perez, supra.* We therefore deem it to be a flagrant and ill-intentioned violation of the rules governing a prosecutor's conduct at trial. We summarily reject the contention by the State raised during oral argument for this appeal that the comments were not misconduct, in that the defendants did not testify at trial. As illustrated by the prosecutor's next point raised during closing argument, the "lying or mistaken" argument can be even more egregious when the defendant does not testify than when he or she does. Misstating the bases upon which a jury can acquit may insidiously lead, as it did here, to burden-shifting and to an invasion of the right to remain silent. First, the prosecutor erred by telling the jury that it could acquit only if it found that the complaining witness lied or was confused. Next, the prosecutor argued that there was no reasonable doubt because there was no evidence that the witness was lying or confused, and if there had been any such evidence, the defendants would have presented it:

> [T]here is absolutely no evidence . . . that [D.S.] has fabricated any of this or that in any way she's confused about the fundamental acts that occurred upon her back in that bedroom. *And because there is no evidence to reasonably support either of those theories, the defendants are guilty as charged of rape in the second degree.*

Verbatim Report of Proceedings at 668-69 (emphasis ours). These statements improperly shifted the burden to the defendants to disprove the State's case. The comments also infringed upon the defendants' election to remain silent, when viewed in conjunction with the following remark: "[I]t's true that the burden is on the State. *But you . . . would expect and hope that if the defendants are suggesting there is a reasonable doubt, they would explain some fundamental evidence in this [matter].* And several things, they never explained." Verbatim Report of Proceedings at 756-57 (emphasis ours). The prosecutor went on to argue that the defendants had not explained

why the music in D.S.'s room got louder, how D.S. got scratched, and how D.S. saw Pam Spokus enter the bedroom, implying that the defendants had a duty to explain this evidence, and that because they did not, the defendants were guilty.

■ A defendant has no duty to present evidence; the State bears the entire burden of proving each element of its case beyond a reasonable doubt. *State v. Traweek*, 43 Wn. App. 99, 107, 715 P.2d 1148, *review denied*, 106 Wn.2d 1007 (1986), *disapproved on other grounds by State v. Blair*, 117 Wn.2d 479, 491, 816 P.2d 718 (1991) (citing *In re Winship*, 397 U.S. 358, 90 S. Ct. 1068, 25 L. Ed. 2d 368 (1970)). The prosecutor's statements infringed on the defendants' constitutionally guaranteed right to remain silent, which error was compounded by the prosecutor's earlier misstatement of the law that the jury could acquit only if it found D.S. to be lying or mistaken.

The argument in this case is closely akin to the argument held improper in *Traweek*, wherein the prosecutor questioned the defendant's failure to present witnesses and evidence to provide innocent explanations for the State's evidence. *Traweek*, 43 Wn. App. at 106. The *Traweek* court held that the argument infringed upon the defendant's privilege against self-incrimination and improperly shifted the burden of proof to the defense. *Id.* at 107.

■ We agree with the comment of defendant Lee's counsel in his brief that "trained and experienced prosecutors presumably do not risk appellate reversal of a hard-fought conviction by engaging in improper trial tactics unless the prosecutor feels that those tactics are necessary to sway the jury in a close case." Appellant Lee's Brief at 30. Here, the evidence of sexual intercourse was overwhelming, but the evidence of forcible compulsion was not. Based on the complaining witness's conduct immediately prior to intercourse, her degree of intoxication, her request for Vaseline during intercourse and the perception of Spokus and Backstrom that what was going on in the bedroom

was consensual, any rational trier of fact could have harbored reasonable doubt that D.S. was raped in the second or third degree. Accordingly, we are not persuaded that the prosecutor's misconduct was harmless beyond a reasonable doubt.

These errors pervaded the prosecutor's closing and rebuttal arguments, and were not cured by the lengthy, legitimate arguments telling the jury why it could find that D.S. was a credible witness, in spite of her conduct and level of intoxication. The prosecutor correctly argued that men and women have every right to place limits on their sexual activity, regardless of their intoxication level or conduct immediately prior to intercourse. However, defendants in "date rape" cases are subject to the same constitutional protections as every other kind of defendant. The State must convict on the merits, and not by way of misstating the nature of reasonable doubt, misstating the role of the jury, infringing on the right to remain silent, and improperly shifting the burden of proof to the defense. D.S.'s credibility cannot properly be bolstered by invasion of these fundamental constitutional precepts.

We conclude that the misconduct, taken together and by cumulative effect, rose to the level of manifest constitutional error, which we cannot find harmless beyond a reasonable doubt given the nature of the evidence at trial. Accordingly, the failure of the defense to object contemporaneously does not preclude review. We reverse and remand for a new trial.[3]

The remainder of this opinion lacks precedential value

---

[3]We are not persuaded by defendant Fleming's argument that the prosecutor's referral to the State's evidence as "undisputed" was improper. As noted by the *Traweek* court, it is proper for the State to comment on its own evidence. *Traweek*, 43 Wn. App. at 107. Fleming also contends that the prosecutor committed misconduct by repeatedly referring to the defense attorneys by name during rebuttal argument. We find nothing inherently improper about referring to defense attorneys by their given names, and do not find any merit in this argument in the context of this trial. Finally, Fleming's contention that the prosecutor committed misconduct by accusing the defense attorneys of misstating or mischaracterizing evidence is also without merit. We are not persuaded that the challenged statements were a declaration that defense counsel were

and will not be published in the Washington Appellate Reports, but will be filed for public record pursuant to RCW 2.06.040.

BAKER, C.J., and COX, J., concur.

Reconsideration denied November 6, 1996.

Review denied at 131 Wn.2d 1018 (1997).

deliberately misrepresenting the evidence or that they amounted to an attack on defense counsels' veracity.