FILED
COURT OF APPEALS
DIVISION II

2013 APR 23 PM 12: 01

STATE OF WASHINGTON

BY_____
DEPUTY

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 42200-0-II |
| Respondent, | UNPUBLISHED OPINION |
| v. | |
| EMANUEL L. FINCH, | |
| Appellant. | |

WIGGINS, J.P.T.[1]—Emanuel Leonard Finch was convicted by a jury of first degree child rape and first degree child molestation. He challenges his convictions primarily on various allegations of prosecutorial error. In addition, he argues that he received ineffective assistance of counsel due to his attorney's failure to object to the prosecutor's allegedly improper comments. Finally, he challenges the trial court's sentencing authority to prohibit him from possessing alcohol and to order him to attend an anger management program. We affirm Finch's conviction, and sentence, but remand this case to modify the conditions of his community custody.

## FACTS AND PROCEDURAL HISTORY

Emanuel Leonard Finch is the grandfather of two minor girls, L.O.J. and T.J. In 2006 L.O.J. and T.J. moved in with their grandfather. Soon after, Finch began molesting the girls. At the time, L.O.J. was seven or eight, and T.J. was eight or nine. He continued to regularly molest

---

[1] Justice Charlie Wiggins is serving as a judge pro tempore of the Court of Appeals, Division II, pursuant to CAR 21(c).

them, both digitally and orally, and occasionally rape them until June of 2010. That summer, L.O.J. told a friend at camp that her grandfather did "yucky" things to her. Clerk's Papers (CP) at 3. The friend later told her mother, who reported it to child protective services. L.O.J. and T.J. were forensically interviewed and disclosed Finch's repeated molestation and rape.

Detectives interviewed Finch, who initially denied touching the girls. However, in a subsequent interview, Finch admitted to touching them with his hand and with his tongue. He denied penetrating L.O.J. and T.J. with his penis. At trial, Finch denied touching the girls in any improper way. When questioned about his confession in the earlier interview, he said that it was possible that he had said those things, but that he did not remember it.

The jury found Finch guilty of all charges, plus two aggravating circumstances: abuse of a position of trust and an ongoing pattern of sexual abuse with a minor. Finch was sentenced to 600 months of confinement and multiple conditions of community custody, including a prohibition on possession of alcohol and mandated participation in anger management training. He appeals his conviction.

## ANALYSIS

### I. PROSECUTORIAL ERROR

Finch challenges his convictions based on a number of allegations of prosecutorial error. Prosecutorial error is a ground for reversal if it is both improper and prejudicial. *State v. Monday*, 171 Wn.2d 667, 675, 257 P.3d 551 (2011) (citing *State v. Fisher*, 165 Wn.2d 727, 747, 202 P.3d 937 (2009)). This court reviews a prosecutor's comments in context of the entire argument, the issues in the case, the evidence addressed in the argument, and the jury instructions. *State v. Dhaliwal*, 150 Wn.2d 559, 578, 79 P.3d 432 (2003). Comments are generally prejudicial only if there is substantial likelihood that the error affected the jury's verdict. *Monday*, 171 Wn.2d at 675 (citing *State v. Yates*, 161 Wn.2d 714, 774, 168 P.3d 359 (2007)).

A. The prosecutor argued reasonable inferences from the evidence

The first issue is whether the prosecutor argued facts not supported by the record. Attorneys are "'permitted latitude to argue the facts in evidence and reasonable inferences'" in closing arguments. *Dhaliwal*, 150 Wn.2d at 577 (quoting *State v. Smith*, 104 Wn.2d 497, 510, 707 P.2d 1306 (1985)). Statements not sustained by the record are improper. *Id.* (citing *State v. Rose*, 62 Wn.2d 309, 312, 382 P.2d 513 (1963)). In *Dhaliwal*, the defendant argued that the prosecutor's comments were based on improper religious and cultural stereotyping, rather than the evidence. *Id.* at 576. However, the court found that the prosecutor properly drew inferences from testimony by using a witness's comments about cultural values as an explanation of possible motive. *Id.* at 579.

Here, the prosecutor's statements were likewise reasonable inferences from the evidence. First, the prosecutor's statement about nightly molestation was based on the victims' testimony about the length of time and frequency of the abuse. L.O.J. and T.J. each testified that their grandfather molested them regularly for a period of two to three years. The prosecutor's statement about the nightly abuse came directly from this testimony, not requiring any inference.

Second, the prosecutor's comment that Finch had confessed to "some, but not all of his dark deeds," 6 Report of Proceedings (RP) at 840, stemmed from the inconsistency between the victims' testimony and the defendant's partial confession. The victims testified that Finch both molested them and raped them. While Finch admitted to most of the charges against him, he did not confess to rape. The prosecutor made a reasonable inference from this discrepancy to say that Finch had confessed to most of what he had done, but not all.

Finally, the prosecutor relied on a combination of trial testimony when she asked the jury, "Have you heard every single awful thing that that man has done to them? No. Will anybody, any single individual, ever truly know every detail about every event? And the answer to that is

also no." 6 RP at 866. The victims testified that the abuse was frequent and spread over several years, but at trial, they spoke in detail about only some of the incidents. The prosecutor used this, along with the child interviewer's testimony that abuse disclosure is a gradual process, to infer that no one, including the jury, would ever hear every detail. Each challenged statement was based on trial testimony.

B. The prosecutor did not make inflammatory statements

The second issue is whether the prosecutor made statements intended to inflame the passions and prejudices of the jury. Arguments intended to "'incite feelings of fear, anger, and a desire for revenge,'" or that are "'irrelevant, irrational, and inflammatory,'" are improper. *State v. Elledge*, 144 Wn.2d 62, 85, 26 P.3d 271 (2001) (quoting BENNETT L. GERSHMAN, TRIAL ERROR AND MISCONDUCT § 2-6(b)(2), at 171-72 (1997)). For example, in *State v. Echevarria*, the court found that the prosecutor's comments were impermissibly inflammatory and incited feelings of fear. 71 Wn. App. 595, 598, 860 P.2d 420 (1993). In that case, which involved an alleged cocaine dealer, the prosecutor discussed the war on drugs, commented on the "battlefield" in our neighborhoods, and made references to the Gulf War and the Vietnam War. *Id.* at 598. These remarks encouraged the jury to "convict the defendant, not on basis of the evidence, but, rather, on the basis of fear and repudiation of drug dealers in general." *Id.* at 599. However, statements limited to the circumstances of the crime are permissible, *id.*, even where the "very nature of the crime renders its narration an emotional event," *State v. Rice*, 110 Wn.2d 577, 606, 757 P.2d 889 (1988).

Here, Finch challenges the three statements that he alleged were not based in the evidence as inflammatory. However, these statements were related to the circumstances of his crimes; they did not reference outside events, as the prosecutor did in *Echevarria*, 71 Wn. App. 595. For example, the use of the word "battlefield" when prosecuting a drug dealer, as the

-4-

prosecutor did in *Echevarria*, is only tenuously connected to the crime. Here, the prosecutor's comments were focused specifically on Finch, not on the general threat that child molesters pose. In cases of sexual abuse, to completely avoid any inflammatory effect would be to hamstring the prosecutor and downplay the significance of such acts. The prosecutor's statements, while invoking some emotion, were reasonable inferences from testimony at trial and limited to the circumstances of the crime.

    C. The prosecutor did not argue that the jury must find that the State's witnesses were lying in order to acquit Finch

Next, we evaluate whether the prosecutor suggested that the jury must find that the State's witnesses lied in order to acquit the defendant. It is error for a prosecutor to offer the jury the "false choice" that it can find a defendant not guilty only if it also finds that opposing witnesses lied. *State v. Miles*, 139 Wn. App. 879, 890, 162 P.3d 1169 (2007). In *Miles*, the defendant's testimony conflicted with the testimony of the State's key witness and seriously undermined the State's case. *Id.* at 882. There, the prosecutor told the jury that they heard "'mutually exclusive'" versions of the events and that "'if one is true, the other cannot be.'" *Id.* at 889. The court found this to be error and reversed the conviction. The court in *State v. Fleming*, 83 Wn. App. 209, 921 P.2d 1076 (1996), reached a similar conclusion. There, the prosecutor told the jury that to find the defendants not guilty, "'you would have to find either that [the victim] has lied about what occurred in that bedroom or that she was confused.'" *Id.* at 213. The court held that this improperly shifted the burden of proof to the defendant, as well as misstated the standard. *Id.*

Here, the challenged statements were in direct response to defense counsel's theory of the case, which centered on discrediting the State's witnesses. In his closing, defense counsel suggested that the victims and detectives were not credible or had reason to lie. In her rebuttal,

the prosecutor contrasted Finch's testimony with that of the detectives, asking, "Do you believe that everybody else is lying except for the Defendant? Obviously not. . . . Ladies and gentlemen, fundamentally you will have to ask yourself who was lying." 6 RP at 875. Unlike in *Fleming*, the prosecutor did not misstate the burden of proof. She followed her statement by explaining that the State had the burden of proof and had met it stating, "As a result," 6 RP at 876, "it is no longer reasonable to doubt that the Defendant molested and raped [T.J.]". She did not offer the jury the false choice that, in order to acquit Finch, it must find that the State's witnesses lied.

D. The prosecutor did not vouch for the credibility of the State's witnesses

The next issue is whether the prosecutor impermissibly expressed her personal belief that the State's witnesses were credible. It is improper for a prosecutor to vouch for the veracity of a witness. *State v. Ish*, 170 Wn.2d 189, 196, 241 P.3d 389 (2010). Remarks in direct response to a defense argument are not improper as long as they do not "go beyond what is necessary" to respond to the argument. *State v. Dykstra*, 127 Wn. App. 1, 8, 110 P.3d 758 (2005). For example, in *State v. McKenzie*, 157 Wn.2d 44, 54, 56, 134 P.3d 221 (2006), defense counsel questioned the victim's credibility in his closing and used the defendant's neat appearance to raise doubt as to his guilt. The prosecutor used the word "guilty" in her rebuttal, but each time it was a direct reply to defense counsel's interpretation of the evidence. *Id.* The court found that the defendant had not met his burden of showing that the comments were "clear[ly] and unmistakabl[y]" the prosecutor's personal belief. *Id.* at 56-57.

The same is true here. Finch fails to show how the prosecutor's statements were clear and unmistakable opinions, rather than reasonable inferences from the evidence. First of all, as in *McKenzie*, the prosecutor's statements directly responded to defense counsel's suggestions that the State's witnesses might have motive to lie. In his closing, Finch's defense counsel asked,

-6-

"Has the testimony of these girls been coached, or is it imagination?" 6 RP at 854. The prosecutor replied:

> There is absolutely no motive, no reason for these girls to make this up. There is no reason that they would want to leave that house where they had some measure of stability. They had video games, they had computers, they had lessons. They had all sorts of things.

6 RP at 876. In addition to positive details that negated a reason to lie, the prosecutor gave examples of the negative consequences to the girls of complaining. These statements were in direct response to defense counsel's questions.

Furthermore, in a case that turned on credibility, the prosecutor pulled specifics directly from trial testimony to demonstrate that her witnesses were believable. For example, in describing the credibility of the detectives, she used details from their testimony to support their credibility. Her statements were not personal opinion—they were based on trial evidence.

E. A curative instruction could have neutralized any prejudice caused by the prosecutor's alleged expression of personal opinion of the defendant's guilt

Finally, Finch argues that the prosecutor improperly expressed her personal opinion of his guilt. However, we need not decide whether this challenged conduct was improper because a curative instruction could have neutralized any prejudice the prosecutor's comments may have caused.

A defense counsel's failure to object to a prosecutor's statement waives any error, unless the statement was "so flagrant and ill-intentioned that it causes an enduring and resulting prejudice that could not have been neutralized by a curative instruction to the jury." *State v. Brown*, 132 Wn.2d 529, 568, 940 P.2d 546 (1997). For example, in *State v. Belgarde*, the court found prejudice that could not have been neutralized by an instruction where the prosecutor described members of the American Indian Movement as "a deadly group of madmen," "militant," and "butchers, that killed indiscriminately Whites and their own." 110 Wn.2d 504,

506-07, 755 P.2d 174 (1988) (emphasis omitted). The court found that these words were so inflammatory that an instruction could not have neutralized the prejudice. *Id.* In *In re Glasmann*, the court held that a curative instruction would have been insufficient where the prosecutor superimposed the word "GUILTY" three times over the defendant's photo and where the defense's argument was that he was guilty, but only of lesser crimes than those with which he was charged. 175 Wn.2d 696, 702, 286 P.3d 673 (2012). Due to the power of imagery and the nuanced distinctions that separate degrees of crime, the court held that an instruction would not have cured the prejudice. *Id.* at 707-08.

By contrast, in *Dhaliwal*, the court found that the defendant had not demonstrated enduring prejudice where the prosecutor used the phrases "'their nature'" and "'how they operate,'" and talked about choosing "'a path that was all too common within the Far West Cab Company and indeed the Sikh community.'" 150 Wn.2d at 580. The court found that this was a "far cry" from the inflammatory comments in *Belgarde*, 110 Wn.2d at 506-07, and that the comments referred not to a religious stereotype, but referenced a common method of dealing in the community, which was testified to in trial. *Dhaliwal*, 150 Wn.2d at 580. In *McKenzie*, the court also found that a curative instruction could have neutralized any prejudice. There, the prosecutor's rebuttal focused on the victim's "lost innocence" in response to defense counsel's closing theme that the defendant would have to settle for the words "not guilty" instead of "innocent." 157 Wn.2d at 60. The prosecutor said, "'If you saw [the victim] walking down the street, you wouldn't know that [the defendant] had taken her innocence. You might think she was innocent too, and she was until the guilty man took that from her.'" *Id.* at 56. The court acknowledged that, while the prosecutor went "too far in her effort to exploit defense counsel's theme," it was not so flagrant and ill-intentioned that it could not have been cured. *Id.* at 60.

-8-

Here, a curative instruction could have likewise neutralized any prejudice the prosecutor caused with her allegedly improper comments. First, her comments lack the clear inflammatory influence of those in *Belgarde*. 110 Wn.2d 504. Saying that the defendant was "[G]uilty. Guilty. Guilty," 6 RP at 814, may have affected the jury, but *Dhaliwal*, 150 Wn.2d 559, and *McKenzie*, 157 Wn.2d 44, show that some emotional language can be cured by a judge's instruction. Furthermore, while as in *Glasmann*, 175 Wn.2d 696, the prosecutor repeated the word "guilty" three times, here she did not have the powerful added impact of a visual.

Had defense counsel objected, the court could have reminded the jury that the closing arguments are not evidence and that the lawyers' opinions are irrelevant. And, though aggravating circumstances are at play here, the jury was merely asked to answer yes or no, rather than to evaluate nuanced degrees of crimes as in *Glasmann*. *Id.* The weight of the testimony against Finch, coupled with his weak and unsubstantiated defense, made it very unlikely that the prosecutor's statements triggered his guilty verdict. The prosecutor's statements do not constitute conduct so flagrant and ill-intentioned as to create prejudice immune to a curative instruction.

## II. INEFFECTIVE ASSISTANCE OF COUNSEL

To demonstrate ineffective assistance of counsel where counsel failed to object, the appellant must show that 1) not objecting fell below prevailing professional norms, 2) that the proposed objection would have likely been sustained, and 3) that the result of the trial would have been different if the evidence had not been admitted. *In re Pers. Restraint of Davis*, 152 Wn.2d 647, 714, 101 P.3d 1 (2004). There is a presumption that failure to object can be characterized as legitimate trial strategy. *Id.* "'Exceptional deference'" is given to counsel's strategic decisions. *Id.* (quoting *State v. McNeal*, 145 Wn.2d 352, 362, 37 P.3d 280 (2002)).

Finch fails to show that his counsel's performance was insufficient. An attorney's decision not to object falls within the wide range of professional norms. *Id.* at 717. A defendant

must rebut the presumption that a tactical reason existed not to object. *See id.* at 714. Here, it is conceivable that defense counsel didn't object because he thought his objection would not be sustained or because he was reticent to draw more attention to the prosecutor's statements. Other than the conclusory statement that counsel's performance was "not objectively reasonable, nor can it be considered legitimate trial strategy," Br. of Appellant at 25, Finch makes no argument that counsel's performance fell below professional norms. This will not suffice to overcome the strong presumption of effectiveness. Because Finch fails to satisfy this first element, we need not proceed further with this test. Finch has not demonstrated ineffective assistance of counsel.

### III. SENTENCING AUTHORITY

A trial court has the authority to impose conditions of community custody, including crime-related treatment or counseling and affirmative conduct reasonably related to the safety of the community. RCW 9.94A.703(3)(c)–(d). This court reviews sentencing conditions for abuse of discretion. *State v. Warren*, 165 Wn.2d 17, 32, 195 P.3d 940 (2008). A sentence will be reversed if it is manifestly unreasonable, where no reasonable person would agree with the trial court. *State v. Riley*, 121 Wn.2d 22, 37, 846 P.2d 1365 (1993). Here, the trial court exceeded its authority by prohibiting Finch from possessing alcohol and ordering him to participate in an anger management treatment program.

A. There is no express statutory authority to prohibit alcohol possession, nor any evidence that alcohol played a role in Finch's crimes

While the trial court has the statutory authority to prohibit any offender from consuming alcohol, RCW 9.94A.703(3)(e), no statute expressly authorizes the court to prohibit offenders from *possessing* alcohol. The State concedes this lack of authority, as well as the lack of evidence of substance abuse in this case. This provision should be stricken.

B. Any evidence that anger played a role in Finch's crimes is tenuous at best

Anger management treatment is not related to Finch's crime. The circumstances of a crime define the nature of the conditions imposed. *State v. Schmeck*, 98 Wn. App. 647, 651, 990 P.2d 472 (1999). In *Schmeck*, the appellant challenged his sentence of anger management. However, the court found the condition justified because the appellant exhibited angry and aggressive behavior, threatening to kill himself and his ex-wife, violating a protection order by continually threatening her, and calling her a "'dead woman . . . walking.'" *Id.* at 649.

In Finch's case, anger management counseling is not related to his crime. Finch's use of force and threats, as well as his victims' fear that he would yell or tackle them, do not rise to the level of the facts in *Schmeck*. Here, the record does not reflect any instances where the appellant actually did yell at or attack the girls, just that they worried that he would. Furthermore, Finch's use of force did not reflect anger as much as inappropriate—and illegal—desires. The imposition of an anger management program is unreasonable and unrelated.

Nor would Finch's participation in an anger management program be reasonably related to the safety of the community. Generally, counseling is reasonably related to the safety of the community only if the behavior it treats contributed to the offense. *See, e.g., State v. Jones*, 118 Wn. App. 199, 76 P.3d 258 (2003). In *Jones*, the offender was sentenced to alcohol counseling, though there was no evidence that substance abuse contributed to his crime. *Id.* at 208. The court instructed the trial court to strike the provision. *Id.* at 212. The State also argues that anger management is reasonably related to community safety because a presentencing investigation concluded that Finch was sexually deviant and predatory. While this may be true, an anger control course would not treat deviancy and predation. This provision should also be stricken.

## CONCLUSION

We affirm Finch's conviction and 600-month sentence, holding that any alleged error could have been neutralized by a curative instruction. However, we remand to strike the community custody provisions prohibiting alcohol possession and mandating participation in an anger management program.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

_____
WIGGINS, J.P.T.

WE CONCUR.

_____
JOHANSON, A.C.J.

_____
BRIDGEWATER, J.P.T.