# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 74819-0-I |
| | ) | |
| Respondent, | ) | |
| | ) | DIVISION ONE |
| v. | ) | |
| | ) | |
| RODOLFO A. QUINONEZ, | ) | UNPUBLISHED OPINION |
| | ) | |
| Appellant. | ) | FILED: November 13, 2017 |
| | ) | |

MANN, J. — A jury convicted Rodolfo Quinonez of child molestation in the first degree. He claims that two instances of prosecutorial misconduct denied him his right to a fair trial. We disagree and affirm his judgment and sentence.

## FACTS

Sometime in 2009 or 2010, Alva Franco-Hernandez and her husband Roberto Hernandez met Rodolfo Quinonez and his family through church. The families were close. Although they were unrelated, Alva and Roberto's young daughter, V.H. called Quinonez her uncle.

Quinonez's teenage daughter, Erika, began babysitting V.H. a few days each week after school. V.H. was ten years old at the time. Erika would pick V.H. up from her school and take her back to the Quinonez family's apartment. The babysitting

arrangement began in November 2014, but ended a month later in December after V.H. told her mother that she did not want to go to the Quinonez family's apartment anymore. V.H. did not explain why. Because Alva Franco-Hernandez assumed that her daughter wanted to play with someone her own age, she did not press V.H. for an explanation.

On December 10, 2014, V.H. told Leslie Astudillo-Ortega, a staff member at her school, that her cousin Eric, had touched her inappropriately when she was younger. The touching occurred at V.H.'s church. V.H. also described being touched by a different family member; Ortega could not tell if V.H. was referring to a cousin or an uncle. At her supervisor's request, Ortega contacted Child Protective Services (CPS). School staff then notified V.H.'s mother, Alva, that the school had made a report to CPS. Alva confronted V.H. and asked why she had not confided in her. V.H. began to cry and told her mother that she did not want her cousin Eric to be in trouble. She then said that Quinonez had touched her, not Eric.

On January 8, 2015, V.H. told Stephanie Rohwer, the school psychologist, that her cousin and an adult man inappropriately touched her. Rohwer made another CPS report based on this allegation. On January 15, Bellevue Police Detective Jay Moriarty met with V.H., her mother, and the pastor of the family's church to investigate V.H.'s cousin. During the conversation V.H. told Detective Moriarty that "her babysitter's father touched her private part." V.H. told Detective Moriarty that her babysitter's father was Rodolfo Quinonez. Quinonez was arrested and charged with one count of first degree child molestation.

At trial, V.H. testified that Quinonez touched her while Erika was babysitting V.H. at the Quinonez family's apartment. She explained that one day while she was at the

apartment and while Erika was in her room with the door closed, she was sitting on the couch watching a scary movie when Quinonez sat down next to her, covered her with a blanket, and put his hand down her pants and felt her vagina. She believed Quinonez's finger penetrated her vagina. This frightened V.H., and soon after, she left the couch for Erika's room. V.H. was afraid to tell anyone what happened because she believed that her parents would fight with her uncle Rodolfo.

Dr. Rebecca Wiester, the medical director of the CPS program at Seattle Chldren's Hospital, testified that during her examination of V.H. she said that a "grown-up touched [her] private parts." When Dr. Wiester asked who touched her, V.H. replied "Rubolfo [sic]." V.H. also told Dr. Wiester that Quinonez "grabbed [her] hand and made [her] touch his private part" and that he tried to kiss her. Dr. Wiester testified that V.H. told her that Quinonez told V.H. not to tell her mother what he had done.

Erika Quinonez testified that there was never a time when her father was alone with her and V.H. She admitted, however, that there may have been times where her older brother and her father were with her and V.H. in the apartment.

Quinonez did not testify or call any witnesses in his defense. In his closing argument to the jury, Quinonez's counsel argued that V.H. made up the story about Quinonez in order to protect her family's relationship with her cousin Eric's family.

In rebuttal, the prosecutor addressed Quinonez's defense theory:

[STATE]: Ladies and gentlemen, <u>if you believe [V.H.] is lying, then you should absolutely find [Quinonez] not guilty</u>.

[DEFENSE]: Objection. Burden shifting.

COURT: Sustained.

DEFENSE: I would move—

COURT: That will be disregarded by the jury. Ladies and Gentlemen, the burden stays on the State.

STATE: If you don't believe the State has satisfied its burden beyond a reasonable doubt, then you should absolutely find [Quinonez] not guilty. That is your job. That is our duty here. But the evidence is proven beyond any reasonable doubt that [V.H.] is not lying about this. She is telling the truth, and she's been telling the truth since December 10th, 2014. You folks have an incredible duty. I agree with [Defense Counsel] on that point. You represent the <u>conscience of the community</u>.

DEFENSE: Objection.

COURT: Sustained.

DEFENSE: I would ask for a corrective instruction.

COURT: Again, ladies and gentlemen, your role here is not to be the conscience of the community. Your role is to assess the State's presentation of evidence and whether or not they have carried the burden of proof or not.
    Back to the State. And try to stick with appropriate argument.

STATE: I believe I am, your Honor. The State—

COURT: You cannot tell the jury that they are the conscience of the community, . . . Don't do it again.

STATE: Yes, your Honor.

    You started off this case with the assumption the State has not met its burden, the State got it wrong. That's still the assumption you have right now and you should have until you go back in that deliberation room and you believe one way or the other whether the State's met its burden.
    If you believe the State has met its burden, it's your duty to find this defendant guilty. And that's what I am asking you to do, because the evidence proves beyond a reasonable doubt that the defendant committed this crime. We waited—you waited a long time for us when we were out here working. Now we are going to wait for you when you begin your deliberations. Thank you very much for all of your time.[1]

---

[1] Report of Proceedings (Nov. 24, 2015) at 771-73 (adding emphasis to show specific remarks objected to).

The jury found Quinonez guilty of child molestation in the first degree. After the verdict, Quinonez moved for a new trial based on prosecutorial misconduct. The trial court held a posttrial hearing on the motion. It agreed that the prosecutor's statements were out of place but believed that its instructions cured any prejudice. The court denied the motion for a new trial. Quinonez appeals.

## ANALYSIS

Quinonez argues that he was denied a fair trial because of two instances of prosecutorial misconduct and that the trial court abused its discretion when it denied his motion for a new trial.

A trial court may grant a new trial when it "affirmatively appears that a substantial right of the defendant was materially affected" by prosecutorial misconduct. CrR 7.5(a)(2). Trial court rulings based on allegations of prosecutorial misconduct are reviewed for abuse of discretion. State v. Stenson, 132 Wn.2d 668, 718, 940 P.2d 1239 (1997). A trial court abuses its discretion when its decision is manifestly unreasonable or based on untenable grounds or reasons. Stenson, 132 Wn.2d at 701.

The defendant bears the burden of showing that the prosecutor's conduct was improper and prejudicial. Even if the conduct was improper, it does not constitute prejudicial error unless we determine that there is a substantial likelihood that the misconduct affected the jury's verdict. Stenson, 132 Wn.2d at 718. We view allegedly improper comments in the context of the entire argument. State v. Gentry, 125 Wn.2d 570, 640, 888 P.2d 1105 (1995).

*Shifting or Misstating the Burden of Proof*

Quinonez first asserts that the prosecutor committed misconduct when he told the jury that if it believed V.H. was lying, then it had to acquit Quinonez. This, Quinonez maintains, shifted the burden of proof, which was improper. We agree with Quinonez and the trial court that the comment was improper, but Quinonez has not shown that there is a substantial likelihood that the misconduct affected the verdict.

We have repeatedly held that "it is misconduct for a prosecutor to argue that in order to acquit a defendant, the jury must find that the State's witnesses are either lying or mistaken." State v. Fleming, 83 Wn. App. 209, 213, 921 P.2d 1076 (1996).

Here, although this remark was improper, Quinonez fails to show prejudice. The remark was isolated and brief. Immediately following it, and before Quinonez could ask the court to strike it, the court ordered the jury to disregard it: "[t]hat will be disregarded by the jury. Ladies and Gentlemen, the burden stays on the State." The court cured any resulting prejudice by immediately admonishing the jury to disregard it and properly instructing the jury. Then, after the court's admonition and instruction, the prosecutor reiterated the State's burden of proof: "If you don't believe the State has satisfied its burden beyond a reasonable doubt, then you should absolutely find [Quinonez] not guilty. That is your job. That is our duty here." The court's decisive and emphatic admonition staved off any prejudice. During the trial court's posttrial hearing on this issue it explained: "I told [the jury] in the strongest language the burden stays with the State. And all the jurors, as I recall, looked at me, as they always did when I talked to them, and nodded at me because they got it at that point."

Quinonez makes three counter arguments but each fails. First, Quinonez argues that the statement here was just as prejudicial as the prosecutor's statement in Fleming. In Fleming, we held that a new trial was required after the prosecutor flagrantly misstated the law and misrepresented the jury's role and the State's burden of proof. 83 Wn. App. at 213. In Fleming, the prosecutor opened closing argument by saying,

> Ladies and gentlemen of the jury, <u>for you to find the defendants, Derek Lee and Dwight Fleming, not guilty of the crime of rape in the second degree,</u> with which each of them have been charged, based on the unequivocal testimony of [the victim] as to what occurred to her back in her bedroom that night, <u>you would have to find either that [the victim] has lied about what occurred in that bedroom or that she was confused; essentially that she fantasized what occurred back in that bedroom.</u>

83 Wn. App. at 213.

The statements in Fleming were far more egregious than the statement here. In this case, the statement was more like an offhand remark than an attention-drawing opening statement of the State's theory of the case. While this remark was improper, the court's immediate admonition and instruction cured any prejudice.

Second, Quinonez argues the placement of the statement in the State's rebuttal and Quinonez's decision not to testify increased the statement's prejudicial effect. We recognize that these "lying" arguments can be more pernicious in trials where the defendant does not testify than when the defendant does testify. See Fleming, 83 Wn. App. at 214. But even if the argument's placement increased its prejudicial effect to Quinonez, we believe the court's instructions cured any prejudice.

Finally, Quinonez argues that in the absence of the prosecutor's misconduct the verdict was far from certain. We disagree. The prejudicial impact of the remark was minimal. The prejudice was cured by the court's instruction and the prosecutor's correct

recitation of the State's burden of proof. The record shows that the court believed that the jury clearly understood its instruction to disregard the improper remark. The misconduct here did not create prejudicial error.

*Inflaming Passions of Jury*

Quinonez asserts next that the prosecutor's "conscience of the community" remark constituted prosecutorial misconduct and warrants a new trial. Again, we disagree. Read in context, the remark was unartful but not improper.

A prosecutor's "appeals for the jury to act as a conscience of the community are not impermissible, unless specifically designed to inflame the jury." State v. Finch, 137 Wn.2d 792, 842, 975 P.2d 967 (1999) (quoting United States v. Lester, 749 F.2d 1288, 1301 (9th Cir. 1984)).

Here, the "conscience of the community" remark was not improper because the prosecutor was speaking about the jury's duty to hold the State to its burden of proof, not specifically about the consequences to society of failing to find Quinonez guilty. The remark was not intended to inflame the jury's passions and set them against Quinonez. But even if we assume that the remark was improper, it caused no prejudice. After Quinonez objected to the remark, the court again instructed the jury on the correct standard. The court "very strongly" instructed the jurors, and they acknowledged this instruction by "again nodd[ing] at [the court]."

The prosecutor's next line of argument also tempered any prejudice. Although he started to challenge the court's admonition, the prosecutor quickly returned to the appropriate argument. He reiterated the State's burden of proof by saying that the jury "started off this case with the assumption the State has not met its burden, the State got

it wrong." Quinonez fails to show why the court's actions failed to cure any resulting prejudice caused by the prosecutor's "conscience of the community" remark.

Quinonez's prosecutorial misconduct claims fail. Accordingly, his claim that the trial court abused its discretion by denying his CrR 7.5(a)(2) motion for a new trial based on prosecutorial misconduct also fails.

Affirmed.

_____ Mann, J.

WE CONCUR:

_____          _____ Cox, J.