# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
## DIVISION ONE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 75701-6-I |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| ANTHONY KIMANI WANJIRU, | ) | UNPUBLISHED OPINION |
| | ) | |
| Appellant. | ) | FILED: January 16, 2018 |
| | ) | |

2018 JAN 16 AH 9:52

COURT OF APPEALS DIV I
STATE OF WASHINGTON
FILED

VERELLEN, C.J. — The State charged Anthony Wanjiru with one count of domestic violence felony harassment. At trial, Wanjiru failed to object during the State's closing argument that the victim, Wanjiru's wife, had the more credible version of events. Because Wanjiru did not object during closing argument and does not establish the prosecutor's remarks were flagrant and ill intentioned, his prosecutorial misconduct claim fails. And because Wanjiru does not establish defense counsel's representation was deficient and the deficient representation prejudiced him, his claim for ineffective assistance of counsel also fails.

We affirm.

## FACTS

The State charged Anthony Wanjiru with one count of domestic violence felony harassment, alleging that Wanjiru threatened to kill his wife, Hannah Mburu, with a hammer within sight or sound of the couple's minor children. Following trial,

the jury convicted Wanjiru as charged. The parties jointly requested a first time offender waiver sentence, and the court imposed the recommended sentence.

Wanjiru and Mburu met and married in Kenya. Wanjiru came to the United States in 2003 and began working as a nursing assistant. After three years, Mburu and the couple's first child emigrated to be with Wanjiru. Mburu also found employment as a nursing assistant. Wanjiru worked day shifts, and Mburu worked nights. They did not comingle their funds, but divided expenses such that Wanjiru paid the home mortgage and Mburu paid for utilities, food, diapers, and other expenses. Both incomes were necessary to support the household. Over time, Wanjiru and Mburu had two other children. At the time of trial, the children were 10, 5, and 3 years old.

By 2015, Wanjiru and Mburu were having marital problems. Mburu felt that Wanjiru tried to control her by keeping her at home, making it difficult for her to speak with friends, and accusing her of infidelity. Wanjiru's jealousy culminated in two incidents in October 2015.

On Saturday, October 3, Mburu and two of the children came home after a birthday party. Wanjiru was suspicious that Mburu had not actually been at the party. He was angry, aggressive, and refused to speak to the party hosts when Mburu suggested they would confirm she had actually been at the party. Wanjiru called Mburu's father to complain that she had come home late without a suitable explanation. Mburu told Wanjiru that she wanted a separation because of the arguments and repeated accusations of infidelity. The ensuing argument became

2

a physical fight, and Wanjiru hit Mburu in the head at least twice. Mburu was concerned for her safety and spent the night in the spare bedroom.

Mburu went to work the next evening, returning home around 8:00 a.m., which was the usual time. She prepared her oldest child for school and sent him on the bus, made breakfast, and went to bed in the spare room while her younger sons continued to sleep. Wanjiru woke up around 10:00 a.m. and told Mburu to get up and make him breakfast. Mburu declined, knowing that the children had something to eat and that she needed to sleep.

Wanjiru eventually demanded Mburu's car keys. Mburu believed that he intended to sell the car to punish her. Mburu kept the door locked and refused to give him the keys. Wanjiru began hitting and kicking the door. He had a hammer in his hand. Wanjiru yelled at Mburu, saying he would take her car and the children if they separated. Wanjiru threatened to break Mburu's legs with the hammer and threatened to kill her. Wanjiru did not stop until Mburu told him she was recording the incident on her cellphone.

Mburu was afraid for her life. Based on his behavior and the physical abuse on October 3, she believed that Wanjiru would attack her with the hammer. She barricaded herself in the spare room and called 911.

Several police officers reported to the scene. Using a loudspeaker, Officer Wiggum announced the police presence and repeatedly ordered Wanjiru to come outside with empty hands raised. After several commands, Wanjiru came out of the house and was handcuffed. The first thing Wanjiru said to the officers was

"Where is the evidence?"[1] Though Mburu and the officers looked inside and outside of the house, they were unable to locate any hammer.

Officers had difficulty obtaining a statement from Mburu because one child was out of control. The officers described Mburu's demeanor as fearful, scared, frantic, shaken, not calm, very upset, distraught, and nervous. Officer Giger confirmed that Mburu had barricaded the door to the spare room. Mburu showed the cellphone video to Officer Hensing, who confirmed that he heard banging and a male voice shouting in a language he could not understand.[2] Mburu told police about Wanjiru's threats and about being hit two days earlier and said that she was afraid for her life. Wanjiru was arrested.

Wanjiru testified at trial. He described the night that Mburu came home late with the two children. Although he claimed they did not argue that night and he did not hit her, he did admit that when Mburu barricaded herself in the spare room, "I knew she was afraid from Saturday."[3] Wanjiru denied threatening Mburu on October 5 and denied touching a hammer that day.

Wanjiru appeals.

---

[1] Report of Proceedings (RP) (July 18, 2016) at 263.

[2] Before Mburu could send the video to the officers by email, the child who was upset during the police interview broke the phone, and attempts to retrieve data from the phone were unsuccessful.

[3] RP (July 18, 2016) at 307.

## ANALYSIS

### *Prosecutorial Misconduct*

Wanjiru contends the prosecutor committed reversible misconduct in closing argument by misstating the facts and improperly shifting the burden of proof, violating Wanjiru's right to a fair trial.

The United States and Washington Constitutions guarantee every defendant a fair trial.[4] A defendant who claims on appeal that prosecutorial misconduct deprived him of a fair trial bears the burden of establishing that the conduct was both improper and prejudicial.[5] The defendant must establish a substantial likelihood that the improper conduct affected the jury's verdict.[6]

Here, Wanjiru did not object to the remarks that he now challenges on appeal. A defendant who does not make a timely objection at trial waives any claim on appeal unless the misconduct at issue is "'so flagrant and ill-intentioned that it evinces an enduring and resulting prejudice'" that could not have been neutralized by a curative instruction to the jury.[7] The absence of an objection by defense counsel "strongly suggests to a court that the argument or event in question did not appear critically prejudicial to an appellant in the context of trial."[8]

---

[4] U.S. CONST. amends. V, VI; WASH. CONST. art. I, § 3.

[5] State v. Fisher, 165 Wn.2d 727, 746-47, 202 P.3d 937 (2009).

[6] State v. McKenzie, 157 Wn.2d 44, 52, 134 P.3d 221 (2006).

[7] Fisher, 165 Wn.2d at 747 (quoting State v. Gregory, 158 Wn.2d 759, 841, 147 P.3d 1202 (2006)).

[8] State v. Swan, 114 Wn.2d 613, 661, 790 P.2d 610 (1990).

"'Counsel may not remain silent, speculating upon a favorable verdict, and then, when it is adverse, use the misconduct as a life preserver . . . on appeal.'"[9]

A prosecutor may commit misconduct by arguing in closing that the defense failed to present witnesses or explain the factual basis of the charges, or asserting the jury should find the defendant guilty because he did not present evidence to support his theory of defense.[10] But merely mentioning "that defense evidence is lacking does not constitute prosecutorial misconduct or shift the burden of proof to the defense."[11]

Here, in closing argument the prosecutor said the jury should credit Mburu's version of events over Wanjiru's because Mburu's version was supported by other evidence, while Wanjiru's was not. The prosecutor highlighted the officer's testimony that Mburu was very distraught, shaken, teary, and trembling when she reported that Wanjiru had threatened her, that Officer Giger confirmed the door to the spare bedroom had been barricaded, and that Officer Hensing had corroborated Mburu's testimony about the cellphone video of someone banging on the door and shouting. The prosecutor also pointed to Mburu's petition for a protection order, in which Mburu described the same events. In contrast, Wanjiru testified that he never hit or threatened Mburu, which contradicted his own testimony that he "knew she was afraid from Saturday."[12]

---

[9] State v. Russell, 125 Wn.2d 24, 93, 882 P.2d 747 (1994) (quoting Jones v. Hogan, 56 Wn.2d 23, 27, 251 P.2d 153 (1960)).

[10] State v. Jackson, 150 Wn. App. 877, 885, 209 P.3d 553 (2009).

[11] Id. at 885-86.

[12] RP at (July 18, 2016) at 307.

The prosecutor also explained that the State had the burden of proof. The prosecutor did not assert or imply that Wanjiru was required to provide evidence; he merely argued that the evidence Wanjiru chose to present was not credible, specifically in light of evidence tending to corroborate Mburu's version of events.

We conclude the prosecutor did not attempt to shift the burden, but argued reasonable inferences from the evidence presented.

Wanjiru also contends the prosecutor committed misconduct by arguing the jury would have to find the State's witnesses were lying in order to acquit him.

It is improper for a prosecutor to argue that in order to acquit a defendant, the jury must find that the State's witnesses are either lying or mistaken.[13] This line of argument mischaracterizes the burden of proof because the jury must acquit unless it has an abiding conviction in the truth of the State's evidence.[14] It is also improper for a prosecutor to argue that in order to believe the defendant, the jury must find that the State's witnesses are lying.[15] That misleads the jury because the jury could believe the defendant and find the State's witnesses were truthful but mistaken.[16]

---

[13] State v. Fleming, 83 Wn. App. 209, 213, 921 P.2d 1076 (1996) (holding the prosecutor's comments were flagrant and ill intentioned where the prosecutor argued, "[F]or you to find the defendants, Derek Lee and Dwight Fleming, not guilty of the crime of rape in the second degree, . . . you would have to find either that [D.S.] has lied about what occurred in that bedroom or that she was confused; essentially that she fantasized what occurred in that bedroom." (emphasis omitted) (second alteration in original)).

[14] Id.

[15] State v. Wright, 76 Wn. App. 811, 826, 888 P.2d 1214 (1995).

[16] Id.

Here, the prosecutor asked rhetorically, "What this really boils down to is [ ] Ms. Mburu, is she mistaken or is she lying?"[17] The prosecutor argued that corroborating evidence from the officers demonstrated that Mburu was neither lying nor mistaken and thus, the jury should credit her testimony. He argued that it was "simply not reasonable" to think that the officers would have provided that consistent, corroborating evidence if it was not true.[18] "They would have to all be in on some conspiracy against Mr. Wanjiru for them all to be involved."[19]

The State did not present the jury with a false choice between believing Wanjiru or believing the State's witnesses were lying, or between the State's witnesses or acquitting Wanjiru.

Wanjiru did not object to the State's closing argument at trial, but contends the alleged misconduct warrants reversal.

Wanjiru must show that the alleged misconduct was "'so flagrant and ill intentioned that it causes an enduring and resulting prejudice that could not have been neutralized by an admonition to the jury.'"[20]

In State v. Barrow, this court held there was misconduct where the prosecutor argued the defendant had effectively called the police witnesses liars by giving contradictory testimony and by telling the jury that "in order for you to find the defendant not guilty . . . you have to believe his testimony and you have to

---

[17] RP (July 18, 2016) at 360.

[18] Id.

[19] Id.

[20] State v. Thorgerson, 172 Wn.2d 438, 443, 258 P.3d 43 (2011) (quoting State v. Russell, 125 Wn.2d 24, 86, 882 P.2d 747 (1994)).

completely disbelieve the officers' testimony. You have to believe that the officers are lying."[21] The court concluded, though improper, the argument did not warrant reversal because defense counsel did not further object, request that the argument be stricken, or ask for a curative instruction.[22] The court observed that "[c]ounsel clearly could have minimized the impact of this argument if he had taken any of these steps. A curative instruction particularly could have obviated any prejudice engendered by these remarks."[23]

Wanjiru does not establish a substantial likelihood that challenged remarks affected the jury's verdict. His testimony was confusing and contradictory. He denied arguing with, hitting, or threatening Mburu when she returned late from the party. He admitted that he knew she was afraid of him because of his response to that incident, and then denied that testimony. He testified that he did not hear the police loudspeaker demanding that he exit the house or the rocks the officers threw at the front door, only looking outside when Mburu pointed out the window. But he expressed no confusion about the officers' presence and immediately asked them "Where's the evidence?"[24] He also said he owned two hammers that were kept in usual locations, but neither Mburu nor the police found either one.

And Wanjiru's theory that Mburu invented the threat to withdraw $1,000 from Wanjiru's bank account while he was in jail and then live rent free with the

---

[21] 60 Wn. App. 869, 874-75, 809 P.2d 209 (1991).

[22] Id. at 876.

[23] Id.

[24] RP (July 18, 2016) at 263.

children in the family home was not compelling in light of the evidence that Wanjiru always paid for housing and that the family needed both incomes. Even if the prosecutor's remarks were improper, Wanjiru does not establish that a curative instruction could not possibly have neutralized any prejudice.

Considering the evidence, arguments, and jury instructions about the burden of proof and the jury's role in determining witness credibility, we conclude it is unlikely the prosecutor's remarks affected the jury's verdict.

*Ineffective Assistance of Counsel*

Wanjiru argues his attorney was ineffective in failing to object during closing argument.

To establish ineffective assistance of counsel, Wanjiru must show both that counsel's representation was deficient and that defense counsel's deficient representation prejudiced him.[25] The inquiry is whether counsel's conduct "so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result."[26]

We begin with a strong presumption that counsel's representation was effective.[27] The defendant must also show prejudice.[28] Prejudice is not established by a showing that an error by counsel had some conceivable effect on

---

[25] In re Pers. Restraint of Hutchinson, 147 Wn.2d 197, 206, 53 P.3d 17 (2002); Strickland v. Washington, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984).

[26] Strickland, 466 U.S. at 686.

[27] Id. at 689.

[28] Id. at 693.

the outcome of the proceeding.[29] The defendant must establish a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different.[30]

Here, Wanjiru suggests "the jury would have been far more likely to find reasonable doubt regarding Mburu's fear and her testimony in general" without the prosecutor's comments, which Wanjiru claims shifted the burden of proof.[31] But in view of the strength of the State's evidence, Wanjiru does not establish that a timely objection or request for a curative instruction would have changed the outcome of his trial.

Because Wanjiru does not establish deficient performance or resulting prejudice, we conclude his ineffective assistance of counsel claim fails.

We affirm.

WE CONCUR:

---

[29] Id.

[30] Id. at 694.

[31] Appellant's Br. at 13.