## IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| THE STATE OF WASHINGTON, | ) | No. 81152-5-I |
| | ) | |
| Respondent, | ) | |
| | ) | DIVISION ONE |
| v. | ) | |
| | ) | |
| MICAH JAMES OLEXA, | ) | |
| | ) | UNPUBLISHED OPINION |
| Appellant. | ) | |
| | ) | |

MANN, C.J. — Micah Olexa appeals his convictions for assault in the second degree and assault in the fourth degree. He argues that his convictions must be reversed for prosecutorial misconduct and that the trial court erred by imposing discretionary legal financial obligations (LFOs). We affirm, but remand to the trial court to strike the discretionary LFOs.

### FACTS

Olexa resided with his mother, Jean Kimerling. Kimerling studied naturopathic medicine and she invited Deborah Langheld, a fellow student, to live in the home. Although the arrangement was meant to be temporary, Langheld resided in the house

Citations and pin cites are based on the Westlaw online version of the cited material.

for almost a year. Kimerling and Langheld decided that Langheld would move out at the end of June 2019, after they completed their final exams.

On June 19, 2019, Olexa became upset with Kimerling. He yelled at her, slapped her, and pushed her against the wall. Olexa told Kimerling he was upset that Langheld was not moving out sooner and insisted she leave. When Langheld arrived home, she noticed that Kimerling was nervous. Kimerling told her that things were not working. Olexa then joined the conversation. Olexa then moved toward Langheld, knocking her out of her chair. He straddled her and hit her on her face repeatedly. Kimerling tried to intervene. Olexa put his hands around Langheld's throat, strangling her. He put his hands over her mouth, which suffocated her, and caused her bladder to void. When Langheld tried to get up, Olexa began kicking her in the ribs. Langheld was able to escape and she drove to a classmate's house who called 911. Kimerling left the house, and spoke to her daughter, who also called the police.

Police apprehended Olexa. Langheld went to the hospital for her injuries. The emergency room doctor reported a concussion, a scalp hematoma, a black eye, a jaw contusion and bruising, rib fractures, blood in her urine, and bruising on her extremities. Langheld also reported pain in her chest and flank to the doctor.

The State charged Olexa with assault in the second degree against Langheld and assault in the fourth degree against Kimerling. Each charge had a domestic violence designation.

Olexa testified at trial. He denied slapping or pushing his mother. He contended that he saw Kimerling and Langheld fighting on the ground, and that he pushed

Langheld off his mother. He testified that he struck Langheld once in self-defense when she charged at him.

A jury convicted Olexa of both counts and found a domestic violence relationship as to both counts. Olexa appeals.

## ANALYSIS

### A. Prosecutorial Misconduct

Olexa argues that prosecutorial misconduct requires us to reverse his convictions. We disagree.

To demonstrate prosecutorial misconduct, the defendant must prove that the prosecutor's conduct was both improper and prejudicial. State v. Emery, 174 Wn.2d 741, 756, 278 P.3d 653 (2012). "If the defendant objected at trial, the defendant must show that the prosecutor's misconduct resulted in prejudice that had a substantial likelihood of affecting the jury's verdict." Emery, 174 Wn.2d at 760. If the defendant did not object, any error is waived unless the prosecutor's conduct was "so flagrant and ill intentioned that an instruction could not have cured the resulting prejudice." Emery, 174 Wn.2d at 760. The defendant must show that (1) no curative instruction would have alleviated any prejudicial effect on the jury and (2) the misconduct resulting in prejudice has a substantial likelihood of affecting the jury's verdict. Emery, 174 Wn.2d at 760-61.

Olexa first contends that the prosecutor misstated the State's burden of proof. During closing argument, the prosecutor argued that the only way Olexa's version of events could be accurate was if Langheld "was lying when she took the stand." The prosecutor also pointed out that defense counsel did not ask Langheld about Olexa's version of events during cross-examination. The prosecutor said that Kimerling's story

would need to be "made up," in order for Olexa's version of events to be accurate. Defense counsel did not object.

We have previously held that "it is misconduct for a prosecutor to argue that in order to acquit a defendant, the jury must find that the State's witnesses are either lying or mistaken." State v. Fleming, 83 Wn. App. 209, 213, 921 P.2d 1076 (1996). The prosecutor in Fleming argued that the only way to acquit the defendant was if the jury found that the victim was lying. We held that the statement was improper because it misstated the law and improperly shifted the burden of proof. Fleming, 83 Wn. App. at 213.

This case is readily distinguishable from Fleming. Here, the prosecutor did not attempt to shift the burden of proof, but instead highlighted how Olexa's account of the events was factually incompatible with Kimerling and Langheld's descriptions of the incident. When "'conflicting versions of the facts and the credibility of witnesses is a central issue, there is nothing misleading or unfair in stating the obvious: that if the jury accepts one version of the facts, it must necessarily reject the other.'" State v. Rafay, 168 Wn. App. 734, 837, 285 P.3d 83 (2012) (quoting State v. Wright, 76 Wn. App. 811, 825, 888 P.2d 1214 (1995)). Therefore, the prosecutor's comments were not improper. Even if the comments were improper, Olexa's counsel failed to object or request a curative instruction. See Emery, 174 Wn.2d at 760-61 (the defendant must demonstrate that the error was flagrant and ill intentioned such that an instruction could not have cured any resulting prejudice).

Olexa next argues that the State violated the advocate-witness rule when the prosecutor offered medical opinions. During closing argument, the prosecutor said that

Langheld's concussion was a "bruise on her brain," which affected her brain actions. The prosecutor also showed the jury a photo of Langheld's neck with bruising and broken skin, stating "that is strangulation." Defense counsel did not object.

The advocate-witness rule prohibits an attorney from appearing as both a witness and an advocate in the same litigation. State v. Lindsay, 180 Wn.2d 423, 437, 326 P.3d 125 (2014). Despite Olexa's contentions, the prosecutor was not attempting to provide medical testimony as a witness, but was commenting on the evidence during closing argument. "In closing argument, the prosecuting attorney has a wide latitude in drawing and expressing reasonable inferences from the evidence." State v. Hoffman, 116 Wn.2d 51, 94-95, 804 P.2d 577 (1991). The record contains significant evidence of Langheld's injuries and the prosecutor was demonstrating that Olexa committed assault in the second degree.

Olexa next contends that the prosecutor improperly elicited testimony concerning Olexa's involvement with police. Olexa moved in limine to exclude all evidence of police contacts related to a prior incident where Kimerling tried to commit Olexa under the Involuntary Treatment Act (ITA), chapter 71.05 RCW, which the court granted. During trial, the prosecutor asked King County Sheriff's Deputy Hughes Ebinger, who responded to the incident, if he had met Olexa before the incident. Ebinger responded "Yes." Defense counsel moved for a mistrial based on this exchange. The court offered to instruct the jury to disregard the question, but the defense rejected the limiting instruction. The court denied the motion for mistrial.

Although the prosecutor's question was in error, Olexa cannot show that a simple "yes," in answer to the question had a substantial likelihood of affecting the jury's

verdict. Further, counsel refused the available remedy by refusing the curative instruction asking the jury to disregard the question. Defense counsel's decision not to request a curative instruction "strongly suggests to a court that the argument or event in question did not appear critically prejudicial to an appellant in the context of the trial." State v. Swan, 114 Wn.2d 613, 661 790 P.2d 610 (1990).

Finally, Olexa contends that the prosecutor's conduct resulted in cumulative prejudice. "'The cumulative effect of repetitive prejudicial prosecutorial misconduct may be so flagrant that no instruction or series of instructions can erase their combined prejudicial effect.'" Lindsay, 180 Wn.2d at 443 (quoting State v. Walker, 164 Wn. App. 724, 737, 265 P.3d 191 (2011)). None of the alleged instances by the prosecutor amounted to prosecutorial misconduct, therefore, cumulative error does not apply.

B. Legal Financial Obligations

Olexa argues that the court erred by imposing discretionary LFOs. The State concedes. We accept the State's concession.

The trial court found Olexa indigent and waived all waivable fees, fines, and interest. The court imposed community custody supervision fees from boilerplate language on the judgment and sentence. Courts shall not impose discretionary costs on defendants who have been found indigent. RCW 10.01.160(3); State v. Ramirez, 191 Wn.2d 732, 748, 426 P.3d 714 (2018). Supervision fees are discretionary LFOs. State v. Dillon, 12 Wn. App. 2d 133, 152, 456 P.3d 1199 (2020). We remand to the trial court to strike the community custody supervision fees.

Affirmed.

_____ Mann, C.J. _____

WE CONCUR:

_____          _____ Dwyer, J. _____