# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 58303-8-II |
| Respondent, | |
| v. | |
| JOSHUA GENE RODEN, | UNPUBLISHED OPINION |
| Appellant. | |

VELJACIC, A.C.J. — Joshua Roden appeals his convictions for possession of methamphetamine with intent to deliver and unlawful possession of a firearm. He argues that the prosecutor committed misconduct by commenting on his right to remain silent and by shifting the burden of proof. He also alleges he received ineffective assistance of counsel because counsel failed to object to the prosecutor's statements.[1] Because Roden received ineffective assistance of counsel, we reverse on this basis and do not reach his other assignments of error and remand for a new trial.

---

[1] Roden also argues an error occurred at sentencing when the second judge that presided over sentencing increased his sentence. He alleges he received ineffective assistance of counsel for counsel's failure to prevent this sentencing error. Finally, he argues the jury demand fee and criminal victim penalty assessment (CVPA) should be stricken. In a statement of additional grounds, Roden argues the trial court erred in reappointing counsel it removed and in pressuring the jury to reach a unanimous verdict.

FACTS

I.    BACKGROUND[2]

In January 2022, Roden was staying at a motel in Longview. Law enforcement observed Roden coming and going from room 24 at the motel. On January 4, after Roden and another individual were seen leaving that room, police contacted Roden in the motel lobby. Officers searched Roden's person and found a plastic bag containing 37.6 grams of methamphetamine[3] and a large amount of cash separated by denominations.[4] Law enforcement also searched room 24 and found three digital scales, two plastic bags containing methamphetamine,[5] a 9 mm handgun on a table, and a "service card" that had Roden's name on it. 1 Rep. of Proc. (RP) at 107. The scales had residue of methamphetamine and heroin on them. There was also a third individual, Hannah Gabbit, in the room when officers searched there. Drugs[6] were found in Gabbit's purse. Officers also found 9 mm ammunition in a car that allegedly belonged to Roden.

---

[2] This factual background is taken from testimony presented at trial.

[3] The Washington State Crime Lab Report indicated there was 27.6 grams of methamphetamine.

[4] No one testified at trial regarding exactly how much cash was found on Roden's person. The only exact amount given came from the State's argument.

[5] The record is unclear as to the amount of methamphetamine discovered in the room or where it was discovered. At trial, exhibit 5 was admitted which was an evidence envelope containing two plastic bags with methamphetamine. Luis Hernandez testified that exhibit 5 was found on Roden's person. However, Chris Trevino testified that only one plastic bag of methamphetamine was found on Roden's person. Testimony was elicited that one of these bags contained 2.7 grams and the other contained 27.6 grams. The other two bags of methamphetamine discovered in the room (Exhibits 6 and 7) appear to not have been weighed at the Washington State Crime Lab. The evidence envelopes list their weight as 0.42 grams and 4.07 grams. Exs. 6-7; *but see* 1 Rep. of Proc. (RP) at 194 (where the State argued in closing that the bag containing 4.07 grams actually weighed 4.7 grams.)

[6] Testimony does not clarify what type of drugs these were.

The State charged Roden with possessing methamphetamine with intent to deliver with a firearm enhancement (count I) and unlawful possession of a firearm in the first degree (count II).

II.    TRIAL

Trial testimony was consistent with the above facts.  Department of Corrections Specialist Fili Matua testified that law enforcement "confirmed with management that Mr. Roden was the primary renter of the room" and that he "observed the rental stub ticket that [was] at the front desk."  1 RP at 110.

Matua and Officer Chris Trevino testified regarding the car where the ammunition was found.  Matua stated he searched Roden's car in the following exchange:

> [State]: Was [Roden's] car searched?
> [Matua]: Yes, it was.

1 RP at 107.

The State elicited the following testimony from Trevino regarding that car:

> [State]: And did you search the Defendant's car?
> [Trevino]: I assisted with that, yes.
> . . . .
> [State]: What did you find when you searched the Defendant's car?
> [Trevino]: Among the things I located were some bullets.

1 RP at 118.  These bullets were identified as 9 mm bullets, the same caliber as that of the firearm found in the motel room.

Roden stipulated that in 2011, he was convicted of a serious offense resulting in revocation of his right to possess or control firearms and that he could not possess or control a firearm on January 4, 2022.  Roden did not testify and called no witnesses.

3

In the State's closing argument, the prosecutor argued that Roden had constructive possession of the methamphetamine and gun that were in the hotel room. Defense counsel argued in closing that the State had not proven its case beyond a reasonable doubt and emphasized Roden's right to remain silent. Defense counsel stated:

> And then there was another individual found in that room, another individual with drugs found in her purse. We don't know what happened when Mr. Roden left the room. We don't know what she was doing in the room, don't know which items were hers. It could be that she took the firearm out of her purse, placed it on the table when he was gone, and then when the officers got there, it was on the table. And it would be nice to know if that happened.
>
> You may be thinking, what could make this all so much easier? Wouldn't it be easier if Mr. Roden just got up and testified and told you whose gun it was? That would make it a lot easier, right? We wouldn't all be here. Some of you probably were thinking that. Or you may have been thinking about that yesterday when we were discussing Mr. Roden's right to testify.
>
> So, I would like to briefly turn to Instruction No. 6. The Defendant is not required to testify. You cannot use his not testifying to infer guilt or to prejudice him in any way. That is his constitutional right. He does not have to testify against himself. . . .
>
> . . . .
>
> [Roden] did not have to get up and tell you whose gun it was. He cannot be compelled to testify as to that. It is the Prosecutor's sole job to prove to you, beyond a reasonable doubt, that those items [were] within his possession and control.
>
> A reasonable doubt is one for which a reason exists and may arise from the evidence or lack of evidence. So, if you're sitting there asking questions, still wondering, who was that other individual? Was it her gun? But what items did she have there? How long have they been staying there? How did they know it was his car? If you're still running through these questions, by the time you've evaluated all the evidence, you have a doubt. You have a reasonable doubt and the State has f[a]iled to prove this case.
>
> . . . . Because beyond a reasonable doubt, even if you're sitting there, after you view all of the evidence, you're thinking about the testimony of the officers, the photos, the scales, if you're thinking he probably knew—he probably knew about the gun. It was probably his, it was in his hotel room. I mean, come on, he probably knew. That's not enough. Probably is not enough for beyond a reasonable doubt.

1 RP at 206-08, 210.

In rebuttal, the prosecutor said the following:

> Now, the Defendant absolutely has the right to remain silent. He doesn't have to testify. You don't have to hold that against him. That doesn't mean that they can't call other witnesses if they want to, or the Defendant can't testify if he wants to. And if the ownership of the car is an issue, they could have called a witness to report that, or they could have even brought it up with the officers on cross examination. They did not do that.
> So, the assumption at this point, the testimony and the evidence that you have to rely on, is that it is his car. And in his car there were nine millimeter bullets. In his motel room, there was a nine millimeter handgun.
> . . . .
> So, maybe this other—Hannah was her name, this girl in the room—could have taken the gun out of her purse and put it on the table. Theoretically, maybe. But probably, maybe, could have, is not beyond reasonable doubt. Just like [defense counsel] said.

1 RP at 217-18. Defense counsel did not object to any of these statements.

The jury submitted two questions during deliberations. First, the jury asked:

> We have unanimous consent on [count] I [possession of a controlled substance with intent to deliver-methamphetamine], but not on the special verdict [for count I] or [count] II [unlawful possession of a firearm in the first degree]. The jury has no questions about evidence or testimony presented. How do we proceed?

Clerk's Papers (CP) at 42. The court instructed the jury to continue deliberations. About an hour later, the jury also asked:

> Is "armed" defined differently than "possession" under law? Count I special verdict uses "armed" count II uses possession.

CP at 43. The court responded by referring the jury to its instructions.

The jury found Roden guilty of possession of a controlled substance with intent to deliver. The jury answered the firearm enhancement special verdict in the affirmative: that Roden was armed with a firearm while possessing controlled substances with intent to deliver. The jury also found Roden guilty of unlawful possession of a firearm in the first degree. Roden was sentenced to 152 months of total confinement and 12 months of community custody.

Roden appeals.

ANALYSIS

I.   PROSECUTORIAL MISCONDUCT

Roden argues the prosecutor committed misconduct by commenting on his right to remain silent and by shifting the burden of proof. Because a curative instruction would have remedied any resulting prejudice of the prosecutor's statements, we disagree.

A.   Legal Principles

Allegations of prosecutorial misconduct are reviewed for an abuse of discretion. *State v. Lindsay*, 180 Wn.2d 423, 430, 326 P.3d 125 (2014). The defendant "bears the burden of showing that the comments were improper and prejudicial." *Id.* Once a defendant demonstrates a prosecutor's conduct was improper, we engage in one of two standards of review. *State v. Emery*, 174 Wn.2d 741, 760, 278 P.3d 653 (2012). If the defendant objects "at trial, the defendant must show that the prosecutor's misconduct resulted in prejudice that had a substantial likelihood of affecting the jury's verdict."[7] *Id.* Alternatively, if the defendant fails to object at trial, "the defendant is deemed to have waived any error, unless the prosecutor's misconduct was so flagrant and ill intentioned that an instruction could not have cured the resulting prejudice." *Id.* at 760-61. "Under this heightened standard, the defendant must show that (1) 'no curative instruction would have obviated any prejudicial effect on the jury' and (2) the misconduct resulted in prejudice that 'had a substantial likelihood of affecting the jury verdict.'" *Id.* at 761 (quoting *State v. Thorgerson*, 172 Wn.2d 438, 455, 258 P.3d 43 (2011)).

---

[7] Relying on *Emery*, Roden asks us to apply a constitutional harmless error analysis. However, *Emery* declined to adopt a constitutional harmless error standard. 174 Wn.2d at 757. Further, because Roden did not object below, he has to show that the prosecutor's misconduct was so flagrant and ill-intentioned that a curative instruction would not have cured any prejudice. *Id.* at 760-61.

Regarding whether the comments are improper, the Fifth Amendment to the United States Constitution prevents a prosecutor from commenting on a defendant's right to remain silent and not testify *State v. Barry*, 183 Wn.2d 297, 306, 352 P.3d 161 (2015). Washington courts consider two factors when determining whether a prosecutor impermissibly comments on the defendant's silence: "(1) 'whether the prosecutor manifestly intended the remarks to be a comment on' the defendant's exercise of his right not to testify and (2) whether the jury would 'naturally and necessarily' interpret the statement as a comment on the defendant's silence." *Id.* at 307 (internal quotation marks omitted) (quoting *State v. Crane*, 116 Wn.2d 315, 331, 804 P.2d 10 (1991), *abrogated on other grounds by In re Pers. Restraint of Andress*, 147 Wn.2d 602, 56 P.3d 981 (2002)). "A criminal defendant has no burden to present evidence, and it is error for the State to suggest otherwise." *State v. Montgomery*, 163 Wn.2d 577, 597, 183 P.3d 267 (2008). Further, while the prosecutor has "wide latitude to argue reasonable inferences from the evidence," it is "improper for the prosecutor to argue that the burden of proof rests with the defendant." *Thorgerson*, 172 Wn.2d at 453.

For example, in *State v. Fleming*, the court held that the prosecutor improperly shifted the burden of proof by stating that "because there is no evidence to reasonably support either of [the defense's] theories, the defendants are guilty as charged." 83 Wn. App. 209, 214, 921 P.2d 1076 (1996) (internal quotation marks omitted) (emphasis omitted). The court also held that the prosecutor infringed on the defendant's right to remain silent when they said, "'[I]t's true that the burden is on the State. But you . . . would expect and hope that if the defendants are suggesting there is a reasonable doubt, they would explain some fundamental evidence in this [matter].'" *Id.* at 214 (internal quotation marks omitted) (emphasis omitted) (alternations in original).

7

B.     Analysis

Here, the prosecutor made the following troubling statements in closing:

- "Now, the Defendant absolutely has the right to remain silent.  He doesn't have to testify.  You don't have to hold that against him."  1 RP at 217-18.
- "That doesn't mean that they can't call other witnesses if they want to, or the Defendant can't testify if he wants to."  1 RP at 218.
- "And if the ownership of the car is an issue, they could have called a witness to report that, or they could have even brought it up with the officers on cross examination.  They did not do that."  1 RP at 218.
- So, maybe this other—Hannah was her name, this girl in the room—could have taken the gun out of her purse and put it on the table.  Theoretically, maybe.  But probably, maybe, could have, is not beyond reasonable doubt.  Just like [defense counsel] said."  1 RP at 218.

First, as to impropriety of the comments on the right to remain silent, it appears likely that the prosecutor manifestly intended the first three bulleted comments to be commentary on Roden's right not to testify, as the prosecutor made the comments immediately after saying Roden "doesn't have to testify"—an apparent acknowledgement that they were aware of Roden's right to silence. 1 RP at 218.

Second, the jury would naturally and necessarily interpret the first and third bulleted statements as commentary on Roden's silence: that the jury did not "*have* to hold [his silence] against him" and that "[it] doesn't mean . . . the Defendant can't testify if he wants to."  1 RP at 218 (emphasis added).  The comments implied that the jury had an option to hold that silence against Roden, even though not *required* to do so, and that it was reasonable to expect Roden to testify or produce evidence.  Similar to *Fleming*, these statements improperly commented on Roden's right to remain silent because they directly suggested negative inferences could be drawn from his decision not to testify.

8

In the fourth bulleted statement, the prosecutor also stated the following in closing:

So, maybe this other—Hannah was her name, this girl in the room—could have taken the gun out of her purse and put it on the table. Theoretically, maybe. But probably, maybe, could have, is not beyond reasonable doubt.[8]

1 RP at 218.

The prosecutor's statement that Roden would have to explain possession of the gun beyond a reasonable doubt directly misstated the law and shifted the burden of proof to Roden. Further, beyond the language in *Fleming* where the prosecutor at least acknowledged that the burden rested with the State, here, in rebuttal, the prosecutor did not qualify the suggestion that Roden carried the burden of proving his theory beyond a reasonable doubt. The prosecutor's statements that "[it] doesn't mean that they can't call other witnesses if [he] wants to" or that "they could have called a witness . . . or . . . cross-examin[ed] [witnesses]," in addition to commenting on Roden's right to silence, also shifted the burden of proof by suggesting Roden had a duty to present evidence. 1 RP at 218. Based on the foregoing, we conclude the prosecutor's comments were improper.

Despite this, however, Roden fails to show that a curative instruction would not have remedied any prejudice that resulted from the prosecutor's improper statements. A curative instruction could have reiterated the correct burden of proof and reminded jurors that they may not hold Roden's decision not to testify or produce evidence against him. Therefore, Roden waived his prosecutorial misconduct claim.

---

[8] In full context it may be possible that the prosecutor was speaking sarcastically, hypothetically, or simply misspoke, but the more likely conclusion the jury would draw is that Roden bore a burden to prove his theory beyond a reasonable doubt.

II.     INEFFECTIVE ASSISTANCE OF COUNSEL

Roden argues he received ineffective assistance of counsel because his attorney failed to object to the prosecutor's improper statements in closing. We agree.

A.     Legal Principles

To prove ineffective assistance of counsel, a defendant must show (1) counsel's representation was so deficient it fell "'below an objective standard of reasonableness'" and (2) that deficiency prejudiced the defendant. *State v. Grier*, 171 Wn.2d 17, 32-33, 246 P.3d 1260 (2011) (quoting and applying test from *Strickland v. Washington*, 466 U.S. 668, 687-88, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984)). Failure to satisfy either requirement defeats the claim. *State v. Bertrand*, 3 Wn.3d 116, 128, 546 P.3d 1020 (2024).

First, "[t]he defendant must overcome 'a strong presumption that counsel's performance was reasonable.'" *Id.* at 130 (quoting *State v. Kyllo*, 166 Wn.2d 856, 862, 215 P.3d 177 (2009)). Legitimate trial strategy or tactics cannot serve as the basis for a claim of ineffective assistance of counsel. *Kyllo*, 166 Wn.2d at 863. A "defendant can rebut the presumption of reasonable performance by demonstrating that 'there is no conceivable legitimate tactic explaining counsel's performance.'" *Grier*, 171 Wn.2d at 33 (quoting *State v. Reichenbach*, 153 Wn.2d 126, 130, 101 P.3d 80 (2004)). Specifically, to show ineffective assistance of counsel for failure to object, "a defendant must show that an objection would likely have been sustained." *State v. Fortun-Cebada*, 158 Wn. App. 158, 172, 241 P.3d 800 (2010).

Second, prejudice requires showing that but for counsel's deficient performance, "there is a reasonable probability . . . the result of the proceeding would have differed." *State v. Estes*, 193 Wn. App. 479, 488, 372 P.3d 163 (2016). "'A reasonable probability is a probability sufficient to undermine confidence in the outcome.'" *In re Pers. Restraint of Crace*, 174 Wn.2d 835, 840, 280

P.3d 1102 (2012) (quoting *Strickland*, 466 U.S. at 694). "[T]he ultimate 'question is whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt.'" *Bertrand*, 3 Wn.3d at 129 (quoting *Strickland*, 466 U.S. at 695). Therefore, "[p]rejudice exists when there is 'a probability sufficient to undermine [the court's] confidence in the outcome.'" *Id.* (alteration in original) (quoting *Strickland*, 466 U.S. at 694).

Further, to prove a person is "armed" for purposes of the firearm sentence enhancement, "the State must prove (1) that a firearm was easily accessible and readily available for offensive or defensive purposes during the commission of the crime and (2) that a nexus exists among the defendant, the weapon, and the crime." *State v. Sassen Van Elsloo*, 191 Wn.2d 798, 826, 425 P.3d 807 (2018).

B.      Analysis

Here, Roden's counsel failed to object to any of the prosecutor's statements at issue.

Despite stating that Roden had the right to remain silent, the prosecutor insinuated that the jury could hold against Roden his decision not to testify. As explained above, the prosecutor's statements also improperly shifted the burden of proof by suggesting that Roden had to prove his theory of the case beyond a reasonable doubt or call witnesses. There was no legitimate trial strategy for failing to object to these statements because Roden's counsel spoke at length about his right to remain silent and not produce evidence. Further, since the statements were improper commentary on Roden's right to remain silent and misstated the burden of proof, an objection would likely have been sustained. Therefore, counsel's performance was deficient.

The deficiency was prejudicial. Not only did the prosecutor's statements shift the burden of proof, they also suggested the jury could hold Roden's silence against him. Moreover, the comments were directly related to the central issue of the case: whether Roden had constructive possession of the firearm in the hotel room, which could tie him to the bullets in the car. The bullets were evidence of possession of the firearm, which also related to the firearm enhancement.

If the State's burden shifting had not occurred, there is a reasonable probability that the jury would have had a reasonable doubt regarding constructive possession of the firearm. This conclusion is supported by the fact that the jury submitted two questions related specifically to possession of the gun.

Moreover, the bullets found in Roden's car were part of the circumstantial evidence connecting him to the motel room and the significant evidence of intent to deliver found in the motel room. This evidence included additional drugs, scales, and cash, in addition to the firearm. While drugs and an unknown amount of cash found on Roden's person were possible evidence of intent to deliver, there is a reasonable probability that the much stronger evidence of intent to deliver found in the motel room would have been significant to the jury. Given the severity of the prosecution's burden shifting and commentary on Roden's right to silence, the failure to object therefore created a reasonable probability that the result of the proceeding would have been different. Roden was prejudiced by counsel's deficient performance.

58303-8-II

CONCLUSION

Because Roden received ineffective assistance of counsel, we reverse and remand for a new trial.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

Veljacic, A.C.J.

We concur:

Glasgow, J.

Che, J.

13